PAUL SAMSON *v.* STATE OF MARYLAND

[No. 975, September Term, 1974.]

*Decided June 30, 1975.*

The cause was argued before POWERS, LOWE and MASON, JJ.

*Leonard A. Briscoe, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard R. Cooper, State's Attorney for Kent County,* and *Basil Wadkovsky, Deputy State's Attorney for Kent County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Paul Samson was convicted in the Circuit Court for Kent County of distributing, and conspiracy to distribute, a controlled dangerous substance of the "Schedule III" variety. The "substance," identified as phendimetrazine, was not listed in the statute, Md. Code, Art. 27, Sec. 279 (c) as subject to the distribution proscription in Sec. 286 (a) (1). The jury was told by the State's Attorney in opening statement that "The Secretary of Health has deemed it to be a dangerous

substance . . .", however, the jury was not made privy to the State's reasoning behind that theory. At argument we were so enlightened, given our choice of two procedural possibilities.

At the conclusion of opening statements, but before any witness was called, the State's Attorney asked leave to approach the bench. He asked the judge "Can I at this point put that letter in evidence?" Little by little we are able to piece together what "that letter" was. Appellant objected but the judge admitted the letter over his objection.

> "Mr. Oneglia: Well, I will object formally in Court. I would like a rule on it. I couldn't find a case in my quick review on it.

> Judge Rasin: Well, you'll have to really offer it. Are you seeking the opportunity to argue to the jury that it is not the law, because that is a legal matter. I will have to instruct them on it. You can make the argument to me. It is not up to them to decide whether or not there is a law. I will permit you to go as far as to explain the law sets forth certain schedules, and also permits the Secretary to add certain substances and he has done that. The Secretary has done that in this case, but whether or not he should have is not up to the jury to determine, as to whether that is the way the law should be enacted. That is strictly a legal matter.

> Mr. Oneglia: Well, I think the law is as it stands, but I can argue, #1—I am not sure there may be some question as to whether the procedures followed were correct under the statute; #2—the whole argument I made—

> Judge Rasin: No, everyone is presumed to know the law. Everyone is afforded the opportunity to know the law. It is up to them to interpret the law, but not to determine whether the law was properly enacted or adopted, or whether the proper procedures have been followed. I don't mean to say you don't have a good point. You can do it before any Court, but not any jury.

Mr. Cooper: The question I am asking is whether the letter, which is actually the law, should be put in the record.

Judge Rasin: Yes, I think it should. You have to have something for the appellate court to see that this has been made part of the law by virtue of Dr. Solomon's including it. You can offer it and Mr. Oneglia can always object to it."

At the conclusion of the bench conference, and again without a witness having been called the case resumed.

"END OF BENCH CONFERENCE:

Judge Rasin: Proceed, Mr. Cooper.

Mr. Cooper: I would like to submit this as State's Exhibit #1.

Judge Rasin: Let it be marked. Mr. Oneglia, you have seen it? The exhibit?

Mr. Oneglia: Yes, I have, Your Honor.

Judge Rasin: Do you object to it?

Mr. Oneglia: Yes, I do, Your Honor.

Judge Rasin: Overrule the objection and it will be admitted into evidence.

(Letter from Dr. Neil Solomon admitted over objection as State's Exhibit #1.)"

The letter [1] introduced was a mimeographed form letter, unsigned except for a certification by Dr. Solomon that "the above is a true and correct copy." There was no testimony or other evidence to explain the effect—if any—of the form letter. Its admission for the purpose of showing "something for the appellate court" that phendimetrazine "has been made part of the law by virtue of Dr. Solomon's [2] including it," commenced with a commendable purpose but was based upon a faulty foundation. Our own research convinced us that phendimetrazine was, at the time of the violation

---

**1.** The letter is reproduced as an appendix.

**2.** Dr. Neil Solomon, Secretary of the Department of Health of Maryland.

charged, a controlled dangerous substance; however, we are not yet convinced that it assumed controlled status by the Maryland Department of Health route. To the contrary, the Attorney General admitted at argument that phendimetrazine had yet to appear in the Maryland Register.[3]

As indicated, not only was appellant's objection to the admission overruled, but he was prohibited from arguing "to the jury that it is not the law," even though he expressly raised "some question as to whether the procedures followed were correct under the statute." The issue was again raised at the conclusion of the case when appellant was denied the right to argue that "the Defendant did not have any knowledge that this was a schedule 3 non-narcotic drug." Upon denying that request the court ruled:

> "Judge Rasin: Well, the Court in its comments already indicated that my ruling in that is that I will not permit you to argue that. Everyone is charged with knowledge of the law, and from a practical point of view I would think anyone trafficking in any type drug who is not a doctor is more or less on notice that he had better check. So I had no difficulty in finding what the law was at the time prohibiting distribution of this type of drug. I will not permit you to argue that to the jury."

The schedules of proscribed drugs are subject to change by the Department of Health "by motion or on the petition of any interested party pursuant to the procedures of the Administrative Procedure Act, and after notice and hearing . . . ." There are listed eight criteria for determination which the Department "shall" consider in deciding whether a substance should be added. After considering those factors "the Department shall make findings with respect thereto

---

**3.** The *Maryland Register* is an official publication of the State of Maryland. It contains adopted, emergency and proposed administrative rules, as well as other documents filed with the Division of State Documents pursuant to Art. 41, Secs. 256B-256S, Annotated Code of Maryland (1974 Supp.), and supplements the Code of Maryland Regulations (COMAR). The text of documents appearing in the *Maryland Register* is the only official, valid and enforceable text of such documents.

and shall issue an order controlling the substance if it finds that the substance has a potential for abuse." Md. Code, Art. 27, Sec. 278 (a).[4]

Additionally, for obvious reasons, the Department is admonished by subsection (d) to:

" ... update and republish a schedule on a semiannual basis for two years from July 1, 1970, and thereafter on an annual basis." [5]

Finally we note that unless the provisions of Md. Code, Art. 41, Sec. 9 are complied with "No rule or regulation hereafter made, promulgated or adopted is effective . . . ." That section provides in full that:

"Prior to the adoption of any rule or regulation by an officer or department of the executive branch of the State of Maryland under any rulemaking power granted by the General Assembly of Maryland, the rule or regulation shall be submitted to the Attorney General of Maryland for approval as to its legality. Every officer, department, board, commission, bureau and similar agency of the State government other than those within the Legislative and Judiciary Departments who has power to make, promulgate, adopt or enforce rules and regulations shall file copies of them pursuant to the provisions of the State Document Law. No rule or regulation hereafter made, promulgated or adopted is effective until after compliance with this section."

---

4. In 1970 a comprehensive revision of the Controlled Dangerous Substances Law was enacted by Chapter 403, Laws of Maryland. Among the proposed changes in Sec. 278 (a) was an attempt to strike out the initiation of an added substance "by motion or petition of any interested party." The original bill, Senate Bill 793, also attempted to remove the requirement of "notice and hearing," however, the General Assembly struck all proposed amendments and reenacted the subsection as originally enacted.

5. Appellee conceded at argument that phendimetrazine had not yet been listed among the proscribed drugs in the Maryland Register at the time this appeal was heard. Presumably the appellant's denied request to argue whether he knew of the law was based upon the Health Department's failure to comply with the annual republication direction in Sec. 278 (d).

Proof of compliance with these provisions would not seem overly difficult.[6] Pursuant to Cts. Art., Sec. 10-204:

> "A copy of a public record, book, paper, or proceeding of any agency of the state or of any of its political subdivisions or of an agency of any political subdivision shall be received in evidence in any court if certified as a true copy by the custodian of the record, book, paper, or proceeding, and if otherwise admissible."

An updated or "republished schedule" certified as a true copy by the custodian of the republished schedule adopted pursuant to law, would be prima facie evidence of compliance with subsection (a) and Art. 41, Sec. 9 which, if unrebutted, would presume conformity with the formalities prescribed by those sections. The burden would thus be shifted to the defendant to rebut that prima facie conformity with testimony or certification of non-compliance from an appropriate departmental custodian. If either the State fails to meet its initial burden or if the defendant proves non-compliance, there is no regulatory law upon which the prosecution can proceed. *Cf. Md. Tobacco Grow. v. Md. Tobacco Auth.*, 267 Md. 20, 23-25.

The letter from Dr. Solomon to the specified parties in interest is not a "republished schedule" pursuant to Art. 27, Sec. 278 (d) showing changes made in conformity with Art.

---

6. Under the State Document Law enacted by the Legislature and effective July 1, 1974, Md Code, Art. 41, Sec. 256B through 256S proof of agency regulations has been even more simplified. Sec. 256R reads:

"(a) *Presumptions.*—The publication of any document in the Code of Maryland Regulations, the permanent supplement, or the Register creates a rebuttable presumption:

(1) That it was duly issued, prescribed, or adopted;

(2) That it was approved as to legality by the Attorney General, if the document is an agency rule; and

(3) That all requirements of this subtitle have been complied with.

(b) *Admissibility.*—Any document published pursuant to this subtitle is admissible as evidence in any court proceeding, if otherwise relevant and material."

However, since we are advised by appellee that the proscribed drug has never appeared in the *Maryland Register* this route was not available to the State.

27, Sec. 278 (a), but rather notification from the Department of Health. That letter of notification is not prescribed by statute but presumably is an agency service to those persons particularly affected; however, it could not substitute for an annual updated republished schedule.

The letter did indicate, however, the reason the Department had taken the action: "in order for the Maryland Controlled Dangerous Substances Act to conform with the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 . . . ." Such conformity relates to a second means of adding a substance to one of the schedules found in Art. 27, Sec. 278 (c).

> "(c) *New substances controlled under federal law.* — Any new substance which is designated as controlled under federal law shall be similarly controlled under this subheading unless the Department objects to such inclusion or rescheduling. In such case the Department shall cause to be published and made public the reasons for such objection and shall afford all interested parties an opportunity to be heard. At the conclusion of such hearing, the Department shall publish and make public its decision, which shall be final. An appeal from a designation made pursuant to this section shall not stay the effect of such designation."

We find in 21 C.F.R. Sec. 1308.13 that phendimetrazine was added as a "new substance . . . designated as controlled under federal law." By virtue thereof and through operation of Art. 27, Sec. 278 (c), distribution of phendimetrazine, at the time appellant was so charged, was a violation of the Controlled Dangerous Substance Act.

Appellant's complaint that:

> "The alleged controlled dangerous substance was not such substance within the meaning of the law at the time of the alleged sale in this case, nor was there legally sufficient proof adduced at the trial to show that the substance, phendimetrazine, was in

fact, at the time of the alleged sale a controlled and dangerous substance within the meaning of the law; and Appellant was denied due process as a result of being tried and convicted for allegedly distributing a substance which at the time of the alleged sale was not listed in the schedule published in accord with constitutional requirements.",

is without merit. That there was no "legally sufficient proof adduced at the trial to show that the substance, phendimetrazine, was in fact, at the time of the alleged sale a controlled and dangerous substance . . ." is no defense, if in fact the substance was controlled as we have found. It is of no consequence that the wrong path was trod by the trial judge in arriving at a proper destination. The truth was *in pectore judicis*.

Finally, the publication that is required, Sec. 278 (d), is directive only and although its failure is an abrogation of the Department's responsibility, its absence does not erase the law. Just as the sale of phendimetrazine subjected appellant to federal prosecution, through Sec. 278 (c) that same act subjected him to State prosecution. His ignorance of the law does not give him immunity from punishment for crime. *Hopkins v. State*, 193 Md. 489, 498-499. Judges, lawyers and laymen alike are all presumed to know the law regardless of conscious knowledge or lack thereof, and are presumed to intend the necessary and legitimate consequences of their actions in its light. *Grumbine v. State*, 60 Md. 355, 356. Without that presumption one could escape the consequence of the law merely by denying prior knowledge of its existence and one's ignorance would become paramount to the law. *Cf. Hopkins, supra.* "[I]gnorance of the law, which every man is bound to know, excuses no man, is as well a maxim of our own law, as it was of the Romans." [7] 4 Cooley, *Blackstone*, Sec. 27 at 1233. That maxim applies equally to state and federal law, to both of which we are subjected.

Neither the letter of notification nor a subsection (d)

---

7. "Ignorantia juris, quod quisque tenetur scire, neminem excusat."

republication is prerequisite to effecting an inclusion of a "new substance" under the control of Maryland law. There is an automatic inclusion under our Act by virtue of its having been included for control by the federal law. It follows that if phendimetrazine was included as controlled by the federal law at the time of the offense, it was the law of Maryland without more, by operation of Sec. 278 (c). It is the same law but in a different way—*eadem est lex sed aliter.*

Procedurally it would have been preferable for the State to have submitted proof of the federal rule or regulation in C.F.R. which added the substance to federal law pursuant to Cts. Art., Sec. 10-202 (a); [8] notwithstanding we judicially notice federal rules and regulations. 31 C.J.S. Sec. 39.

### Jury Argument

Appellant complains that he was denied the right to argue to the jury "a question of law and what in fact was the law." We must strain to find that question preserved for our review. As we have indicated appellant contended *prior to the opening statement*:

> "Well, I think the law is as it stands, but I can argue, #1 — I am not sure there may be some question as to whether the procedures followed were correct under the statute . . . .",

which is hardly a proper preservation of the question which he now poses. However, prior to the court's advisory instructions to the jury, appellant said:

> "I would also like to renew my request that I be permitted to argue to the jury the Defendant did not have any knowledge that this was a schedule 3 non-narcotic drug."

---

8. "(a) *Publications covered.* — Printed books or pamphlets *purporting on their face to be the session or other statutes of the United States,* any of the United States or its territories, or of a foreign jurisdiction, and to have been printed and published by the authority of a state, territory, or foreign jurisdiction or proved to be commonly recognized in its courts, *shall be received in the courts of the state as prima facie evidence* of the statutes."

We find the judge's denial of permission to argue either the operative effect of the law or appellant's lack of knowledge of the law was not reversible error. While it is customary to give counsel relatively broad latitude in argument the limitation under the circumstances in this case was within the court's discretion.

Appellant's argument seems to take sustenance from the peculiar role of Maryland juries as judges of the law as well as fact. Although his argument borders on an *ignoratio elenchi,* the case of answer persuades us to overlook both the failure to preserve the question he asks and the peripheral argument he uses to persuade.

" . . . Maryland's constitutional provision making the jury in criminal cases 'the Judges of Law' does not mean precisely what it seems to say." The conception is not without limitation including exceptions added by statute and others carved out by judicial construction. *Giles v. State,* 229 Md. 370, 382-386. As early as 1858 it was held that juries had no right to pass upon the constitutionality of a statute and that it was proper for the trial court to prohibit counsel from arguing that question before the jury. *Franklin v. State,* 12 Md. 236. In *Slymer v. State,* 62 Md. 237, 241 the Court of Appeals stated that not only was it a court function to

> "pronounce on the sufficiency or insufficiency of the evidence to establish the bringing of the law into operation, it is evident, that whether the law has operative existence or not is a preliminary question for the Court, and the evidence offered is really evidence to the Court on which it pronounces and not the jury. If it were otherwise . . . we might have the anomalous state of things of one jury finding the law operative and the traverser guilty; and another jury finding the law had not been adopted, and for that reason acquitting the accused. Reason and necessity alike require stability in the law."

It is but a short step to reason that that which is not within the aegis of the jury is not subject to argument before them.

Nor does the "renewed" but tangential question give us more pause. If the operation of the law and its existence (or absence) may not be argued to jury and appellant's knowledge thereof is presumed, if follows that the sole effect his actual lack of knowledge thereof could have had was as a circumstance of mitigation. There being no degrees of malevolence involved in distribution, mitigation related only to sentencing, not to guilt or innocence. Sentencing is the responsibility of the judge, not the jury.

We see no error in this case in the denial of argument either as to the law or to appellant's knowledge of the law, whichever appellant contends. That this result not be misinterpreted we express and emphasize that it is not our intent to rule that there is never a right to argue law to a jury. The Court of Appeals has recognized that right under proper factual circumstances both expressly and *sub silentio. Davis v. State,* 168 Md. 10, 12; *Rasin v. State,* 153 Md. 431, 436; *Dick v. State,* 107 Md. 11, 19. But the right to do so is narrowly restricted to the factual context in those cases where the jury has the responsibility " . . . to resolve conflicting interpretations of the law [or] to decide whether the law should be applied in dubious factual situations." *Hamilton and Fletcher v. State,* 12 Md. App. 91, 98, aff'd., 265 Md. 256, citing *Schanker v. State,* 208 Md. 15. In short it may not be directed to what the law ought to be, but what in fact the law is. Nor may the argument exceed the bounds of the province of the jury to decide the law, and that right, as we have noted, has been subjected to some limitations. *Giles, supra.*

"It does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case. That limitation upon the role of the jury as 'judges of the law' is implicit in the holdings that questions of constitutionality may not be argued to a jury, *Franklin v. State,* 12 Md. 236, *Bell v. State,* 57 Md. 108, *Hitchcock v. State,* 213 Md. 273, and

that questions of the admissibility of testimony and the competency of witnesses will rest within the sole province of the trial judge. *Jules v. State*, 85 Md. 305, *Deibert v. State*, 150 Md. 687; *Kirschgessner v. State*, 174 Md. 195." *Hamilton and Fletcher v. State*, 12 Md. App. 91, 98.

The remainder of appellant's contentions are totally without merit. His contention that the court erred "in failing to make a ruling on defendant's motion for removal in open court or in the presence of appellant" is not supported by the record. Although the decision was made in chambers, appellant's attorney concedes that the judge said to him when deciding so "Don't let me forget to rule on the motion to remove." In any event, the discussion and decision would appear to be purely legal matters for which appellant has no right to be present. *Redman and Johnson*, 26 Md. App. 241.

Notwithstanding the fact that there is no affirmative showing that appellant was not in chambers during that colloquy, appellant further extends his argument, again *ignoratio elenchi*. He treats the motion as if it were never ruled upon, seeking reversal for failure to rule on a pretrial motion, which we have held to be error even as to a frivolous motion. *Alston v. State*, 11 Md. App. 624. *However*, the facts here, relating to counsel's responsibility to bring that undecided motion to the attention of the judge at an appropriate time also have precedent in our annals. *White v. State*, 23 Md. App. 151.

The next contention that appellant's conviction was obtained through perjured testimony was withdrawn at argument.

His questions numbered IV and V are broad accusations of denial of due process, denial of right to trial by jury, and instructional error, and are without specification, citation or argument, contrary to the requirement of Md. Rule 1031 c 4. The breadth of issues precludes our ability to understand their import or to respond to them. We consider them waived. *Hyde v. State*, 228 Md. 209, 218; *State Roads Comm. v. Halle*, 228 Md. 24, 31; See *McMillan v. State*, 3 Md. App. 699, 702.

Questions VII and VIII alleging error in denial of motion for acquittal and asserting insufficiency of evidence are answered by reference to the evidence from the trooper who purchased the phendimetrazine from the appellant whom he identified in court. *Metallo v. State,* 10 Md. App. 76. The evidence of conspiracy with Oliver Fisher was clearly established as Fisher arranged the sale from appellant to the trooper. *Wilson, Valentine and Nutter v. State,* 8 Md. App. 653, 671. The collateral complaint of denial of motion for new trial falls as well since it was within the Court's discretion. *Jones v. State,* 16 Md. App. 472. Equally insubstantial is the argument relating to a chain of custody of the evidence introduced since appellant expressly withdrew any objection to its admission. Nor was there objection to the State's Attorney's argument now complained of. Had there been, we see no prejudice in the statements.

*Judgments affirmed.*

340

State of Maryland

OFFICE OF THE SECRETARY
## DEPARTMENT OF HEALTH AND MENTAL HYGIENE
301 WEST PRESTON STREET · BALTIMORE, MARYLAND 21201 · Area Code 301 · 383-3010

Neil Solomon, M.D., Ph.D., Secretary

February 14, 1974

TO:    Dentists
        Hospital Administrators
        Manufacturers and Wholesalers
        Pharmacies
        Physicians
        Veterinarians

FROM:  Neil Solomon, M.D., Ph.D.
        Secretary of Health and Mental Hygiene

In compliance with Section 279(c) and (d) of Article 27 of the Annotated Code of Maryland, notice is hereby given to reschedule, update, and republish the following named substances as indicated:

From Schedule III /Section 279(c)_7 to Schedule II /Section 279(b)_7

        Methaqualone
        Amobarbital
        Pentobarbital
        Secobarbital

To Schedule III /Section 279(c)_7

        Benzphetamine
        Chlorphentermine
        Clortermine
        Mazindol
        Phendimetrazine

To Schedule IV /Section 279(d)_7

        Diethylpropion
        Phentermine
        Fenfluramine

CIRCUIT COURT FOR KENT CO.
PLAINTIFF S ☐
STATE'S ☑ EXHIBIT NO. 1
DEFENDANT'S ☐ CASE NO. 231/
☐ FOR IDENTIFICATION
☑ ADMITTED IN EVIDENCE
DATE Sept 11,1974

This action is being taken in order for the Maryland Controlled Dangerous Substances Act to conform with the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (Public Law 91-513).

NS:lr
This is to certify the above is a true and correct copy

_____
Secretary of Health and Mental Hygiene