STATE OF MARYLAND *v.* MICHAEL JAMES
CICCARELLI

[No. 1422, September Term, 1982.]

\* \* \*

STATE OF MARYLAND *v.* HARRY JOSEPH WINTER

[No. 1423, September Term, 1982.]

*Decided June 13, 1983.*

The cause was argued before GILBERT, C. J., and WILNER and GETTY, JJ.

*Valerie Cloutier, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Robert C. Bonsib, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Gary Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee Ciccarelli. *Steven G. Chappelle,* with whom was *Joseph F. Vallario, Jr.,* on the brief, for appellee Winter.

GILBERT, C. J., delivered the opinion of the Court.

The State asks that we hold the Circuit Court for Prince George's County erred in dismissing an indictment that charges Michael James Ciccarelli and Harry Joseph Winter with violation of the Maryland Controlled Dangerous Substances Act. Embraced within the State's request are two major questions, *videlicet:* 1) Is Md. Ann. Code art. 27, § 278 (c) an unconstitutional delegation of power by the General Assembly of Maryland to the United States Government; and 2) Is phenylcyclohexyl-pyrollidine (PCPy) a controlled dangerous substance in this State?[1]

## I.

Md. Ann. Code art. 27, § 279 consists of five schedules, *i. e.,* lists of controlled dangerous substances. PCPy is not specifically enumerated on any of the five schedules, notwithstanding that it first appeared in the *Federal Register,* 43 F.R. 35734 on August 11, 1978. At that time it was proposed in the *Federal Register* that PCPy be listed in Schedule I of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801-966. A proposal was made that Title 21 of the Code of Federal Regulations § 1308.11 (Schedule I) be amended to include PCPy.

The Administrator of the Drug Enforcement Administration, upon the recommendation of the Assistant Secretary for Health on behalf of the Secretary of the Department of Health, Education and Welfare, found that PCPy had "a high potential for abuse; . . . [that the] substance . . . [had no] currently accepted medical use in treatment in the United States; . . . [and that the substance] lacks accepted safety for use under medical supervision." The *Federal Register* of September 25, 1978, contained the information that PCPy was added to § 1308.11 of Title 21 of the CFR under subsection (d) *Hallucinogenic substances,* item (22). After October 25, 1978, any activity involving PCPy not authorized by the

---

1. We note that PCP and PCPy are chemically totally different. PCPy is an analog of PCP. Among the salient differences, PCPy contains pyrollidine, whereas PCP contains piperidine. They are sufficiently different that the control of one does not control the other.

Controlled Substance Act (84 Stat. 1242; 21 U.S.C. 801) or in violation thereof would be deemed to be criminal.

The Legislature has codified in Md. Ann. Code art. 27, §§ 275-302, this State's controlled dangerous substances laws. The statute, however, makes crystal clear that Schedules I through V of § 279 are not fixed, finite and all inclusive. Section 278 (c) provides:

> "Any *new* substance which is designated as controlled under federal law shall be similarly controlled under this subheading unless the Department objects to such inclusion or rescheduling. In such case the Department shall cause to be published and made public the reasons for such objection and shall afford all interested parties an opportunity to be heard. At the conclusion of such hearing, the Department shall publish and make public its decision, which shall be final. An appeal from a designation made pursuant to this section shall not stay the effect of such designation." (Emphasis supplied.)

The import of § 278 (c) is that any *new* substance added by the federal authorities to their controlled substance schedules is, absent objection made in accordance with the mandate of § 278 (c), also a controlled dangerous substance in this State. *Samson v. State,* 27 Md. App. 326, 333, 341 A.2d 817 (1975).

The appellees, Ciccarelli and Winter, assert that PCPy is not a "new" substance within the meaning of a "fair and reasonable" interpretation of the adjective "new" as used in § 278 (c). Appellees advance the theory that any "new" substance listed on the federal schedule should be considered "new" only until such time as the Maryland General Assembly next meets following the inclusion of the substance on the federal schedule. The Legislature, appellees reason, would then have a reasonable opportunity to include the "new" substance on the appropriate Maryland schedule. Failure of the Legislature to include the substance on a

schedule would result in the substances not being controlled under State law.

Proceeding from that premise, the appellees point to the fact that the General Assembly has met annually since October 25, 1978, but it has not classified PCPy as a controlled dangerous substance. Therefore, appellees conclude that PCPy is not interdicted in Maryland.

We reject that reasoning inasmuch as it is contrary to the unmistakable purpose of the General Assembly in enacting § 278 (c). Through the vehicle of § 278 (c) the Legislature conferred upon the Maryland Department of Health and Mental Hygiene the discretion of either accepting as proscribed in this State the federally controlled dangerous substances, or of interposing an objection to the inclusion of the new substance on the Maryland schedules. If the Department chooses the former, no further action on the part of State authorities is required. Should the Department, however, object to the substance's inclusion as a controlled item in this State, it must comply fully with the notice and hearing provisions commanded by § 278 (c).[2]

## II.

Appellees challenge § 278 (c) on two constitutional grounds. They argue that § 278 (c) is an impermissible delegation of legislative authority because 1) total discretion has been conferred by § 278 (c) on an agency of the government of the United States, a separate sovereignty, and 2) "no action is needed by the State or its subordinate officials to review in any manner the decisions of the federal government prior to their application in the State of Maryland."

Subsection 278 (c), it is contended, allows the Secretary of the United States Department of Health and Human Services, who is definitely not subordinate to either the Maryland Legislature or the Governor of Maryland, to create State statutory law. We think the appellees' challenge falls short of its mark.

---

2. Procedure for the hearing is set forth in COMAR 10.01.03.

It is an abecedarian principle that unless the power to delegate is specifically conferred upon it by the constitution, the Legislature may not abdicate its law-making role to another. Nevertheless, it is "well settled that the Legislature may delegate to subordinate officials the power to carry laws into effect, even though such delegation requires the exercise of a certain amount of discretion which may be regarded as part of the police power. *Pressman v. Barnes,* 209 Md. 544, 552 [121 A.2d 816 (1956)]." *Mason v. State,* 12 Md.App. 655, 675, 280 A.2d 753, *cert. denied,* 263 Md. 717 (1971).

Judge Moylan wrote for this Court in *Mason*:

> "The limitation placed upon such delegation is that the statute authorizing the delegation must guide and restrain the discretion vested in the subordinate official by standards sufficient 'to protect the citizen against arbitrary or unreasonable exercise thereof.' *Tighe v. Osborne,* 149 Md. 349, 360. After discussing the necessary discretion which must be permitted to governmental officials, in an increasingly complex society wherein it is impractical, if not impossible, to summons the Legislature to meet every new contingency, Judge Henderson, in *Givner v. Commissioner of Health,* 207 Md. 184, 191, explained that '[i]n the field of public health, still more flexible standards are permitted. The concept of public health is more definite than that of general welfare, and there is a practical necessity for expert interpretation in its application to concrete situations.' " 12 Md. App. at 675-76.

We think § 278 (a) satisfies the requirement that the statute "guide and restrain" discretion on the part of subordinate officials as called for by the trilogy of *Tighe, Givner,* and *Mason.* That section provides in pertinent part that in determining whether to "add a substance as a controlled dangerous substance," the Department shall consider:

"(1)  Its actual or relative potential for abuse;

(2)  Scientific evidence of its pharmacological effect, if known;

(3)  State of current scientific knowledge regarding the substance;

(4)  Its history and current pattern of abuse;

(5)  The scope, duration, and significance of abuse;

(6)  What, if any, risk there is to the public health;

(7)  Its psychic or physiological dependence liability; and

(8)  Whether the substance is an immediate precursor of a substance already controlled under this subheading."

Contrary to the appellees' view that subsection (c) enables a federal official to decree State laws, that section merely confers upon the Maryland Department of Health and Mental Hygiene a thirty day period in which to decide whether to accept or object to the inclusion on a State schedule of the federally forbidden substance. It is the State agency, and not the federal one, that makes the final determination of whether to include on State schedules substances that are newly prohibited or redesignated by a federal agency. It is the State agency, not the federal one, that is charged with considering, with respect to "new" or redesignated substances, the eight factors enumerated in § 278 (a).

The courts of Missouri, Alabama, Minnesota and Washington have all considered similar polemics concerning statutes that are homologous to Maryland's.

The Missouri statute provides:

"If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the Division of Health, the Division of Health shall similarly control the substance under Sections 195.010 to 195.320 after the expiration of thirty days from publication in the

Federal Register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that thirty day period the Division of Health objects to inclusion, rescheduling or deletion. In that case the Division of Health shall publish the reasons for the objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the Division of Health shall publish its decision, which shall be final unless altered by statute. Upon publication of the objection to inclusion, rescheduling or deletion under Sections 195.010 to 195.320 by the Division of Health, control under Sections 195.010 to 195.320 is stayed until the Division of Health publishes its decision." Section 195.015.4 RSMo. (1978).[3]

The Missouri statute, it is to be noted, directs that State's Division of Health to control any substances controlled under federal law, unless the Division within thirty days after action by the federal authority objects to the inclusion, rescheduling or deletion of the substance in Missouri schedules.

Turning back an attack on the constitutionality of that statute, the Supreme Court of Missouri said in *State v. Thompson,* 627 S.W.2d 298 (Mo. *En Banc* 1982) that, "[i]t is the Division of Health, not a federal agency, which schedules a substance in Missouri." Only if the Division of Health chooses not to object to the federal agency's inclusion, redesignation or deletion does the substance become part of the Missouri law. The distinction is that the Missouri Division of Health, not the federal agency, makes the final determination. Since Missouri retains unto itself, in the form of its Division of Health, the ultimate decision of whether to

---

**3.** We observe that the Missouri statute recites eight factors to be considered by the Division of Health in making a determination as to whether to add a substance to the controlled dangerous substances schedules. The eight factors are in five instances identical to Maryland's. In the remaining three, the difference is stylistic, not substantive.

accept or reject the decision of the federal agency, there is no impermissible delegation of legislative authority. To the same effect, *see Ex parte McCurley,* 390 So. 2d 25 (Ala. 1980); *State v. King,* 257 N.W.2d 693 (Minn. 1977); *Brown v. State,* 398 So.2d 784 (Ala. App. 1981), *cert. denied,* 398 So.2d 787 (1981).

The State of Washington, in *State v. Dougall,* 89 Wash. 2d. 118, 570 P.2d 135 (1977), however, struck down a statute which provided:

> "(d) if any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the Board, the substance shall be similarly controlled under this chapter after the expiration of thirty days from publication in the Federal Register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within the thirty day period, the Board objects to inclusion, rescheduling or deletion. In that case the Board shall proceed pursuant to rule making procedures in Chapter 34.04 R C Wa." R C Wa. 69.50.201 (d).

The Washington court reasoned that if the State Board did not object within the prescribed thirty days, the federal agency's act in adding, redesignating or deleting a substance becomes state law "without appearing in a state statute or a state administrative code." The court said, "[t]he only way we can determine the current status of a drug as a possible controlled dangerous substance is by reference to the Federal Register, a publication not readily available even to many lawyers." The court, in substance, held that even though everyone is presumed to know the law, it is unreasonable to expect a citizen to research state law and regulations, federal law and regulations, and the *Federal Register* in order to ascertain whether a given substance is proscribed.[4]

---

4. The appellee, Ciccarelli, invites our attention to State v. Rodriguez,

We reject the reasoning of the Washington court and expressly decline to follow it. If the Washington court's views were to prevail, the maximum of *ignorantia juris non excusant* [5] would be meaningless. Visitors to Washington State ought then to be heard to explain that they were from another state and did not know the law of Washington, hence they should be excused for their unlawful acts.

It is highly doubtful that acts of a legislature are readily available for public consumption at the time those acts become effective. Yet one who violates a law, even inadvertently after its becoming effective, will not be heard to say that he or she did not know about it because it was not readily available, and he or she could not be reasonably expected to research the matter prior to performing or failing to perform the act of omission or commission that constitutes the offense.

The statute of Washington State, as well as those of most other states, concerned with controlled dangerous substances makes quite clear to one and all that drugs and narcotics are controlled by state *and* federal agencies. We think that it is reasonable to expect a person who intends to possess, manufacture or control a narcotic or drug to investigate the legality *vel non* of the particular substance.

"There is no war between the Constitution and common sense." [6]

---

379 So.2d 1084 (La. 1980). That case, we think is of no aid to Ciccarelli in that it is factually inapposite to the matter at bar. In *Rodriguez* the stricken statute had provided that the secretary of the appropriate state agency *shall* add any substance as controlled if the United States Drug Enforcement Agency so classified it. The secretary of the state agency was but a "rubber stamp," divested of any discretion in the matter.

**5.** Ignorance of the law does not excuse.

**6.** Justice Tom Clark, Mapp v. Ohio, 367 U.S. 643, 657, 6 L.Ed.2d 1081, 1091, 81 S.Ct. 1684, 84 A.L.R.2d 933 (1961), *reh. denied,* 368 U.S. 871, 7 L.Ed.2d 72, 82 S.Ct. 23 (1961).

## III.

Appellees take the position that § 278 (c) fails to give notice to a person of ordinary intelligence that PCPy is proscribed by Maryland laws. Appellees reason that a person charged under § 278 (c) with possession of PCPy is thusly denied the fundamental due process guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article 23 of the Declaration of Rights, Constitution of Maryland.

The thrust of appellees' argument is that since Maryland law does not itself declare that PCPy is a controlled substance, one must refer to the federal law before acquiring the knowledge that the substance is banned in Maryland. Compelling such a reference to federal law, appellees contend is impermissible.

Appellees base their discussion on § 278 (a) and (d) which they assert permit the Department to add substances to the schedules of controlled dangerous substances, but obligate the Department to update and republish those schedules annually. We answered that contention in *Samson v. State, supra.* We said, speaking through Judge Lowe, "the publication that is required [by] Sec. 278 (d), is directive only and although its failure is an abrogation of the Department's responsibility, its absence does not erase the law." 27 Md. App. at 334. Simply stated, the fact that PCPy has not been included in an update of the Maryland schedules does not affect its legality. While it might be the better practice for the Department to publish an update annually, its failure to do so does not make lawful that which is unlawful.

## IV.

Appellees assert that because the Legislature has from time to time since October 25, 1978, "updated" the schedules contained in § 279 by way of amendment (*see* Laws 1982, ch. 402, and Laws 1979, ch. 267) without including phenylcyclohexyl pyrollidine (PCPy) on a schedule, it has acquiesced in the "non-control" of PCPy. Appellees perceive

as proof of the validity of their argument that had the Legislature intended to prohibit PCPy in this State, it could have added the substance to a schedule in § 279. The short answer to that argument is that the Legislature is under no obligation to include PCPy in § 279, in order for the substance to be controlled. As already explained, PCPy was adopted by the Department when it accepted the federal agency's addition of PCPy as a controlled substance. Once the substance was established as controlled, no further action was needed.

The General Assembly is obligated by Md. Const. Art. III § 29 to publish its amendments to the Code of Law, but the addition of PCPy on a schedule is not an amendment of the law. That is the precise reason the Department of Health and Mental Hygiene is empowered to add, subtract or redesignate controlled substances. The Legislature has determined that, absent a license, controlled substances are unlawful to possess, own, distribute or manufacture. The Department specifies, based on the scientific data available, what substances should be scheduled as controlled. The substances may from time to time be redesignated or in light of subsequent scientific discovery even deleted from the status of a controlled substance, but control over other substances nevertheless remains. The former is for the Department to decide; the latter for the Legislature.

## V.

Appellees further aver that the General Assembly failed to afford them fair notice as to what conduct was forbidden by the statute. They say that requiring them to look beyond the statute to the *Federal Register* denies them due process of law. We answered this argument in part II of this opinion. Additionally, we addressed it in *Mason v. State, supra,* in a strikingly similar context. There, the appellant complained that a law was so vague and indefinite as to be in contravention of the Constitution of the United States and Articles 21 and 23 of the Maryland Declaration of Rights,

because in determining whether a particular substance (PCP) was controlled in Maryland, he was referred by State law "beyond the four corners of the Maryland Statute to the Federal Drug Act." That act, in turn, referred "him on to the regulatory promulgations of the Secretary [of Health, Education and Welfare]" as published in the *Federal Register.* We held in *Mason* that the State statute which did so, was not void for vagueness. We discern no reason in the instant case to depart from that holding.

It is well settled that publication of rulings and regulations in the *Federal Register* provides legal notice of their content to all the world unless otherwise provided by law. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Wolfson v. United States,* 492 F.2d 1386, 1392 (1974); Federal Register Act of 1935, 49 Stat. 500, 502, 44 U.S.C. § 1507. "Regulations when duly published in the Federal Register have the force of law." *United States v. Messer Oil Corp.,* 391 F.Supp. 557, 561-62 (W.D.Pa. 1975). Since every man is presumed to know the law, *Allers v. Tittsworth,* 269 Md. 677, 686, 309 A.2d 476 (1973), appellees are presumed to know that the federal government had included PCPy as a controlled substance, and that Maryland had adopted that prohibition.

> *Judgments reversed; indictments reinstated; case remanded for further proceedings.*
> *Costs to be paid by appellees.*