659 A.2d 1271

Abraham Arah WARSAME

v.

STATE of Maryland.

No. 75, Sept. Term, 1994.

Court of Appeals of Maryland.

June 19, 1995.

William Lyle Poe, Jr., Columbia, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

The issue this appeal presents is whether a substance controlled in Maryland by virtue of Maryland Code (1957, 1992 Repl.Vol., 1994 Cum.Supp.), Art. 27, § 278(c)[1], remains controlled despite the fact that the substance has never been listed in § 279, the Maryland schedule of controlled dangerous substances. The Circuit Court for Anne Arundel County found that it did. Accordingly, the court found Abraham Arah Warsame, the appellant, guilty of possession of Cathine,[2] a schedule IV non narcotic controlled dangerous substance, with intent to distribute, suspended a term of imprisonment, and placed him on a period of probation. After the appellant had noted a timely appeal to the Court of Special Appeals, but before that court had considered it, we issued a writ of certiorari on our own motion.

---

1. Maryland Code (1957, 1992 Repl.Vol., 1994 Cum.Supp.), Art. 27, § 278(c) provides:

    (c) *New substances controlled under federal law.*—Any new substance which is designated as controlled under federal law shall be similarly controlled under this subheading unless the Department objects to such inclusion or scheduling. In such case the Department shall cause to be .published and made public the reasons for such objection and shall afford all interested parties an opportunity to be heard. At the conclusion of such hearing, the Department shall publish and make public its decision, which shall be final. An appeal from a designation made pursuant to this section shall not stay the effect of such designation.

    Unless otherwise indicated, future statutory references are to Article 27.

2. The State abandoned its reliance on Cathinone, an ingredient in the Khat plant, as a basis for conviction, inasmuch as that substance was controlled after the appellant had been charged. In any event, the laboratory analysis was positive for Cathine.

## I A.

The facts, about which there are no disputes, are simple and straightforward. The appellant was on a flight from London, England to Baltimore. Upon deplaning and arriving at customs, the appellant's luggage was searched, with his consent. Discovered in his luggage were 101 bundles, or 47 lbs. of Khat, a large leafy plant, indigenous to certain parts of Africa. Upon subsequent chemical analysis, the plant was determined to contain Cathine. That substance had been added to Schedule IV of the Federal Schedule of Controlled Substances in 1988. *See* 53 Fed.Reg. 17459 (1988). The appellant was subsequently charged with and, having waived his right to jury trial, tried by the court for, possession with intent to distribute and possession of Cathine, a controlled dangerous substance. As we have seen, the appellant was convicted of the former charge.

## B.

The thrust of the appellant's argument is that the requirement of § 278(d) [3] that the Department update and republish the controlled dangerous substances schedules is designed to provide notice of the changes that have occurred in such schedules over the preceding year. But rather than focus on the Department, as § 278(d) does, the appellant chooses to interpret that section, together with what he perceives to be the intent of the overall scheme embodied in § 278, to require the General Assembly to, itself, update and republish the schedules. As he sees it, § 278(c) is merely a stop-gap measure—substances controlled consistently with the federal government's actions retain that status only so long as they are "new", *i.e.*, until the next update or republication is required. With specific reference to the facts *sub judice*, the appellant asserts:

---

3. Article 27, § 278(d) provides:
   (d) *Updating and republishing schedules.*—The Department shall update and republish a schedule on a semiannual basis for two years from July 1, 1970, and thereafter on an annual basis.

Four to five years is ample opportunity [for the State to itself publish the law]. To decide otherwise is to unconstitutionally strain the word "new" in the statute. Furthermore, to give no legal effect to the scheduling requirement of § 278(d) would be an unconstitutional denial of the appellant's right to reasonable notice.

Appellant's Brief at 11.[4]

## C.

Not unexpectedly, the State takes the opposite position. Relying on *Samson v. State*, 27 Md.App. 326, 341 A.2d 817

---

4. In his opening brief, the appellant denied that he was challenging the constitutionality of § 278(c), noting that he saw "nothing improper about the State obtaining its information from the Federal government, incorporating the Federal regulations into its criminal justice apparatus, and designating the technical authority to make evaluations of drugs to its qualified State agency." Appellant's Brief at 8. On the contrary, he said that he took issue only with the trial court's interpretation of § 278(d), "[t]he obvious intent of ... [which] is to enable the State to make amendments, additions, and corrections to the schedule of controlled dangerous substances as new drugs are developed or discovered [and].... to be protective of the rights of the citizens of the State to be both free from dangerous drugs and also to be free from intrusions on their constitutional rights to proper notice." *Id.* at 8–9. In his rebuttal brief, however, the appellant seems at times to be making the opposite argument, that § 278 is unconstitutional, at least if it is interpreted otherwise than as the appellant thinks it should be. Thus, he argues that, to be constitutional, § 278 must be interpreted so

(1) That the term "new" in Section 278(c) ... [is] given its usual and ordinary meaning within the context of the statute, to mean drugs which the State has not had a reasonable opportunity to incorporate into its schedule, and

(2) That the actions of the Department shall be such as to give reasonable notice to the public of the drugs that are proscribed, by the publishing of updated schedules in the criminal code, and

(3). That the Department act in coordination with the legislature so that the making of a new criminal law remains a legislative function.

Appellant's Rebuttal Brief at 1. The appellant also believes, and so contends, that failure of the Legislature, acting in conjunction with the Department, to act affirmatively to include in the Maryland schedule a substance controlled initially pursuant to § 278(c) and to codify that schedule would be an unconstitutional delegation of legislative authority to the federal government. *Id.* at 3. We decline to address these arguments, raised for the first time in rebuttal. *See Langworthy v. State*, 284 Md. 588, 399 A.2d 578 (1979), *cert. denied*, 450 U.S. 960, 101 S.Ct.

(1975) and *State v. Ciccarelli*, 55 Md.App. 150, 461 A.2d 550 (1983), it counters the appellant's argument by pointing out that the statutory scheme does not contemplate that the controlling of specific substances is a task which is entrusted to the Legislature on every occasion when the issue arises; it is, rather, a matter which the Legislature has designated the Department to perform. Thus, the State argues that whenever a substance has been controlled pursuant to § 278(c), by the Department's failure to object, that substance remains controlled in Maryland even though the Legislature never includes it in the § 279 schedules. The State's argument goes even further. Recognizing that the focus of § 278(d) is on the Department, it contends that the failure of the designated agency to update and republish schedules on an annual basis, as it is required by § 278(d) to do, does not permit a defendant charged with an offense involving the possession of a substance previously controlled pursuant to § 278(c) to escape punishment. The State, in other words, accepts the holding of the Court of Special Appeals in *Samson, supra,* 27 Md.App. at 334, 341 A.2d at 823, that the updating and republication requirement in § 278(d) is "directive only and although its failure is an abrogation of the Department's responsibility, its absence does not erase the law." Furthermore, the State notes that because § 278(d) makes clear that the schedules in § 279 are not necessarily the most current or accurate lists of controlled substances in Maryland, and because it designates the Department as the repository of such lists, the appellant was on notice to make appropriate inquiries with the Department.

## II

We approach, as the parties have done, the critical issue in this case—the role of the General Assembly in the updating and the republication of the controlled dangerous

1419, 67 L.Ed.2d 384 (1981); *Beck v. Mangels,* 100 Md.App. 144, 640 A.2d 236, *cert. granted,* 336 Md. 405, 648 A.2d 991 (1994); *Federal Land Bank, Inc. v. Esham,* 43 Md.App. 446, 406 A.2d 928 (1979).

substances schedules—by determining the meaning of § 278(d). Thus, we once again must engage in statutory interpretation. Determining the meaning and purpose of a statute requires, in addition to the words that the Legislature used in enacting it, consideration of the statutory scheme of which it is a part. *See State v. Crescent Cities Jaycees Found., Inc.*, 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *Baltimore Gas & Elec. Co. v. Public Serv. Com.*, 305 Md. 145, 157, 501 A.2d 1307, 1313 (1986). Moreover, no portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." *GEICO v. Insurance Commissioner*, 332 Md. 124, 132, 630 A.2d 713, 714 (1993).

## III

Section 278 deals with the "[c]ontrol of substances." The scheme it prescribes contemplates that the need to control dangerous substances will be decided in three ways. Under the first, pursuant to the command that the agency is responsible for controlling all substances enumerated in § 279, the Department "may, by motion or on the petition of any interested party pursuant to the procedures of the Administrative Procedure Act, and after notice and hearing, add a substance as a controlled dangerous substance." Subsection (a). The determination whether to add a substance must be made in light of eight factors, *i.e.*:

(1) Its actual or relative potential for abuse;

(2) Scientific evidence of its pharmacological effect, if known;

(3) State of current scientific knowledge regarding the substance;

(4) Its history and current pattern of abuse;

(5) The scope, duration, and significance of abuse;

(6) What, if any, risk there is to the public health;

(7) Its psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled. . . .

*Id.* An order controlling a substance "shall issue" if the Department's findings reveal that the subject substance has a potential for abuse. *Id.*

The second method of controlling substances relates to "new" substances controlled under federal law.. Thus, when federal law designates as controlled a substance not previously controlled in Maryland, that substance "shall be similarly controlled under this subheading unless the Department objects to such inclusion or rescheduling." Also contained in subsection (c) is the third method. In the event that the Department objects to the federal control of a substance, it is required to cause its reasons to be published and made public and to conduct a hearing. The decision reached at the conclusion of the hearing, which must be published and made public, is final. Subsection (d) places on the Department the responsibility to "update and republish a schedule ... on an annual basis," beginning after July 1, 1970. Thus, what subsection (d) requires the Department to do is quite clear; the words the Legislature used are not at all ambiguous. *See Harris v. State,* 331 Md. 137, 145, 626 A.2d 946, 950 (1993); *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993). The question then becomes what is the purpose of subsection (d)?

IV

Although the *Samson* court touched upon it, the issue that this case presents was neither the focus nor the issue in that case. Notwithstanding that the defendant had challenged "whether the procedures followed [to control Phendimetrazine and communicate that act] were correct under the statute," *id.* at 330, 341 A.2d at 821, the question addressed by the *Samson* court actually was the sufficiency of the evidence—the adequacy of the proof offered by the State to prove that phendimetrazine, a substance not listed in § 279(c), was indeed a controlled substance, "that this has been made part of the law by virtue of Dr. Solomon's including it." 27 Md.App. at 329, 341 A.2d at 820. The State offered a letter from the Secretary of the Department of Health & Mental Hygiene, addressed to dentists, hospital administrators, manufacturers

and wholesalers, pharmacies, physicians and veterinarians, specifying that phendimetrazine was a Schedule III controlled substance, as proof that phendimetrazine was controlled in Maryland. *Id.* at 340, 341 A.2d at 826. The letter purported to be "in compliance with § 279(c) and (d) of Art. 27" and to give notice "to reschedule, update, and republish" the substances listed. *Id.* According to the letter, "this action is being taken in order for the Maryland Controlled Dangerous Substances Act to conform with the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (Public Law 91–513)." *Id.*

Seeking to ascertain the nature and effect of the Secretary's letter, the court considered the Department's responsibility for updating and republishing schedules pursuant to § 278(d) and for controlling dangerous substances pursuant to § 278(a). Noting that "[a]n updated or 'republished schedule' certified as a true copy by the custodian of the republished schedule adopted pursuant to law, would be prima facie evidence of compliance with subsection (a) and Art. 41, Sec. 9 [present Maryland Code (1984, 1993 Repl.Vol.) §§ 10–106, 107 of the State Government Article] which, if unrebutted, would presume conformity with the formalities prescribed by those sections," *id.* at 332, 341 A.2d at 822, the court concluded that the letter was not a republished schedule pursuant to § 278(d); rather it was simply a notification, as an agency service, from the Department. *Id.* at 332–33, 341 A.2d at 822. That did not end the inquiry, however. It remained to be determined whether the substance had ever been controlled under Maryland law. Toward that end, and cognizant that the letter stated its purpose—"to conform [the Maryland Controlled Dangerous Substances Act] with the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970"—the court directed its attention to § 278(c). It opined that it was by use of that method that phendimetrazine had been controlled. *Id.* at 333, 341 A.2d at 822.

Holding that the State's proof was legally sufficient, *id.* at 335, 341 A.2d at 823, the court rejected, as running afoul

**522**

of the maxim that ignorance of the law is no excuse, the argument that, because the unlawfulness of possession of phendimetrazine was derivative, the defendant had inadequate notice. *Id.* at 334, 341 A.2d at 823. Responding to that argument, the court concluded that § 278(d) [5] "is directive

---

5. The *Samson* court suggested that subsection (d) was included in § 278 "for obvious reasons." *Samson v. State,* 27 Md.App. 326, 331, 341 A.2d 817, 821 (1975). It did not state explicitly what those reasons were, although an observation made in a footnote provides a clue: "[P]resumably the appellant's denied request to argue whether he knew of the law was based upon the Health Department's failure to comply with the annual republication direction in Sec. 278(d)." *Id.* at 331 n. 5, 341 A.2d at 821 n. 5. Similarly, the court's discussion of § 278(d) in the context of the maxim that ignorance of the law is no defense suggests that the court recognized subsection (d) as a notice provision. *Id.* at 334, 341 A.2d at 823. It appears that the *Ciccarelli* court viewed the provision the same way and for the same reasons. *See* 55 Md.App. at 159, 461 A.2d at 555–56.

There does not appear to be any conceivable purpose for subsection (d) other than to require compilation, on an annual basis, and publication in a Maryland source, of a list of those substances that have been controlled during the preceding year. Consequently, § 278(d) is a notice provision. There is the suggestion in both *Samson* and *Ciccarelli, see Samson,* 27 Md.App. at 330–335, 341 A.2d at 820–23; *Ciccarelli,* 55 Md.App. at 160, 461 A.2d at 556, that subsection (d) has relevance only with respect to substances controlled by the affirmative action of the Department and not as to those derivatively controlled by reference to the federal schedules. The statutory scheme embodied in § 278 does not support that conclusion. Rather than placing it immediately following subsection (a), the Legislature placed subsection (d) at the very end of the statute, clearly evidencing the intent that the Department update and republish the schedules to reflect all changes during the preceding year, by whatever method those changes may have been effected.

In fact, an updated and republished schedule of controlled dangerous substances is more necessary when substances are controlled pursuant to the first sentence of subsection (c), by virtue of the Department's failure to object to the federal control of a substance. Under subsection (a), substances are controlled pursuant to an order issued, after notice and hearing, pursuant to the Administrative Procedure Act, (the "APA"). *See* Maryland Code (1984, 1993 Repl.Vol.) § 10–101 *et seq.* of the State Government Article. The APA provides that the required notice must appear in the Maryland Register, § 10–111; *see* § 10–112, the temporary supplement, *see* § 7–206, to the Code of Maryland Regulations (COMAR), the official compilation of regulations issued by State agencies. *See* § 7–205. Moreover, the order controlling the substance must also appear in COMAR. *See* § 10–114. Therefore, on each occasion that a dangerous substance is controlled by the Department pursuant to subsection (a), there necessarily will be provided in a

only" and, consequently, that the Department's failure to comply with its direction "does not erase the law." *Id.* Indeed, the court asserted, "[n]either the letter of notification nor a subsection (d) republication is prerequisite to effecting an inclusion of a 'new substance' under the control of Maryland law." *Id.* at 334–35, 341 A.2d at 823–24.

That § 278(d) is directive only was reaffirmed in *Ciccarelli.* In that case, among other challenges, the defendants argued that § 278(c) did not provide notice to a person of ordinary intelligence that the particular substance for the possession of which they were convicted was proscribed by Maryland law and thus denied them due process as guaranteed by the

---

Maryland source notice of that fact. That is also true when the substance is controlled pursuant to subsection (c), after the Department's objection. On the other hand, when control is by virtue of the Department's failure to object, notice that the substance has been controlled will never appear anywhere in the Maryland regulatory machinery.

Compliance with subsection (d) would assure that notice that "new" substances have been controlled in Maryland is provided in a Maryland source. An updated republished schedule of controlled dangerous substances fits within the broad definition of regulation. A regulation is defined by Maryland Code (1984, 1993 Repl.Vol.) § 10–101(e) of the State Government Article, as

a statement or an amendment or repeal of a statement that:
(i) has general application;
(ii) has future effect;
(iii) is adopted by a unit to;
1. detail or carry out a law that the unit administers;

\* \* \*

(iv) is in any form, including:
1. A guideline;
2. A rule;
3. A standard;
4. A statement of interpretation; or
5. A statement of policy.

Section 7–205(a)(2) and (3) of that Article requires that each regulation and each document that the General Assembly requires to be published with a regulation be included in the Code of Maryland Regulations (COMAR), the official compilation of the regulations issued by Maryland agencies. *See also* § 10–114.

An order adding a substance as controlled, pursuant to subsection (a), thus must be published in COMAR. *See* n. 5 *supra; Samson* 27 Md.App. at 331–32, 341 A.2d at 821–22. It would appear that an

Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights. The specific defect to which they referred was the statute's requirement that a defendant consult federal law to determine whether the substance is banned in Maryland. Noting the defendants' reliance on § 278(a) and (d), the court stated, "the fact that PCPY has not been included in an update of the Maryland schedules does not affect its legality. While it might be the better practice for the Department to publish an update annually, its failure to do so does not make lawful that which is not lawful." *Id.* at 160, 461 A.2d at 556. The court was equally unimpressed with the argument, quite similar to that made in the case *sub judice*, that "a 'new' substance within the meaning of 'a fair and reasonable' interpretation of the adjective 'new' as used in § 278(c) [is] ... 'new' only until such time as the Maryland General Assembly next meets following the inclusion of the substance on the federal schedule." *Id.* at 153, 461 A.2d at 553. That argument, the court asserted, was "contrary to the unmistakable purpose of the General Assembly in enacting § 278(c)." *Id.* at 154, 461 A.2d at 553.

## V

Subsection (d) of § 278 requires that the updating and republication of controlled dangerous substances schedules be done by the Department, not by the General Assembly. Consequently, the State correctly argues that the Legislature is under no obligation to republish or update the schedules within some "reasonable" time after a substance has been controlled either by the Department or pursuant to subsection (c). In that regard, its reliance on the legislative history to the 1986 amendment of § 279 is telling and appropriate. In connection with the 1986 amendment to House Bill 1479, a summary of the committee report, referring to the fact that the bill added certain substances to schedules already in existence, stated:

---

updated and republished schedule compiled pursuant to subsection (d), must be also.

The substances added by this bill to the State schedules are controlled under federal law, and the Department of Health and Mental Hygiene does not object to their inclusion as controlled dangerous substances by the State. While not required in order for the State to regulate these substances, the additions should be helpful to law enforcement officers, drug inspectors, judges and others who need to refer to the latest list of controlled substances. The addition of these substances will equate the State schedules with those of the federal government.

That comment does not, however, negate, or even address, the Department's responsibility under subsection (d) annually to update and republish schedules. The Legislature thus is not, itself, required annually to update and republish the schedules contained in § 279. Because that is the premise of the appellant's argument, we reject it. It is the Department to which the legislative mandate contained in subsection (d) is directed.[6]

---

**6.** In delegating to the Department the responsibility annually to update and republish the controlled dangerous substances schedules, the Legislature used the word "shall," thus, mandating that the Department discharges that responsibility. *See In re James S.*, 286 Md. 702, 708, 410 A.2d 586, 589 (1980) ("Under settled principles of statutory construction, the word 'shall' is ordinarily presumed to have a mandatory meaning"); *State v. Hicks*, 285 Md. 310, 334, 403 A.2d 356, 368 (1979) (same); *Johnson v. State*, 282 Md. 314, 321, 384 A.2d 709, 713 (1978) ("We have stated on numerous occasions that in the absence of a contrary contextual indication, the use of the word 'shall' is presumed to have a mandatory meaning, . . ., and thus denotes an imperative obligation inconsistent with the exercise of discretion."); *Moss v. Director*, 279 Md. 561, 564–65, 369 A.2d 1011, 1013 (1977) ("It is now a familiar principle of statutory construction in this State that use of the word 'shall' is presumed mandatory unless its context would indicate otherwise...."); *United States Coin & Currency v. Dir.*, 279 Md. 185, 187, 367 A.2d 1243, 1244 (1977) (the use of the word "shall" ordinarily is presumed mandatory); *Bright v. Unsat. C. & J. Fund Bod.*, 275 Md. 165, 169–70, 338 A.2d 248, 250–51 (1975) ("[W]e observe that ordinarily the word 'shall,' unless the context within which it is used indicates otherwise, is mandatory when used in a statute, and thus denotes an imperative obligation inconsistent with the idea of discretion."); *Maryland Med. Serv. v. Carver*, 238 Md. 466, 479, 209 A.2d 582, 589 (1965) ("Ordinarily the word 'shall' is mandatory and it is presumed that the Legislature used this word in its usual and natural meaning unless

VI

In 1988, the United States government controlled an ingredient in Khat, Cathine, as a schedule IV non narcotic controlled dangerous substance. It was listed in 53 Federal Register 17459 in 1988 as Cathine [ (+) − norpseudophedrine]. The appellant stipulated to the Maryland State Police's analysis of the large green leafy Khat plant seized from him. The laboratory report containing the analysis [7] concluded that the plant contained "Cathine IV CDS".

The appellant challenges the sufficiency of the evidence to prove that Cathine IV CDS is the same substance as Cathine [ (+) − norpseudophedrine]. Because, he submits, "the identification made by the State clearly does not match the name of the proscribed controlled dangerous substance in the Federal Register," the evidence was insufficient and he should, consequently, not have been convicted. He also argues that the court could not supply the necessary proof by taking judicial notice of common everyday factual information, since, in this instance, neither Cathine nor Norpsedophedrine is a commonly used or understood slang or colloquial word.

---

there is something in the legislation to indicate otherwise."). At oral argument, we were informed that the Department has not always complied with the Legislative mandate. The State conceded that, from 1989 through 1991, the schedules were not republished, due to fiscal cutbacks. We were also told that updated schedules were republished in 1992, 1993 and 1994. Judging from the November 1, 1994 update, to the Department, republication apparently means sending the updated schedules to the pharmacies in the State and to the Depository Libraries for Maryland publications, rather than publishing them in COMAR or the Maryland Register.

The effect of the Department's non-compliance with the subsection (d) mandate is not presented on this record. Accordingly, we expressly do not intimate any opinion as to the correctness of the Court of Special Appeals' holding in *Samson* and *Ciccarelli* that subsection (d) is "directive" only or whether the Department's interpretation of "republish" is accurate. Instead, we leave resolution to another day, when the issues properly have been raised, briefed, and argued.

7. The form is entitled "Maryland State Police Request for Laboratory CDS Examination Chain of Custody Log/Laboratory Report."

The trial court rejected the appellant's argument, reasoning that all the appellant had done was to raise a mere theoretical possibility that the substance analyzed was different from that listed in the Federal Register. That, it concluded, was insufficient "to shift the burden of production to the prosecution to produce evidence that the substance tested did in fact comply with State guidelines." Op. at 3. The trial court also relied on Maryland Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.) § 10–1001 of the Courts & Jud.Proc. Art., which provides that the chemist's report alone is prima facie evidence that the subject substance was properly analyzed and constitutes a controlled substance. It concluded that the signed statement of the chemist was sufficient to prove that the analyzed substance was prohibited by Maryland law. The State entirely agrees with the trial court's analysis. So do we.

In a sufficiency challenge, the applicable standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Albrecht*, 336 Md. 475, 479, 649 A.2d 336, 338 (1994); *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830, 842 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). What weight to give the evidence is a matter solely within the province of the trier of fact. *Branch v. State*, 305 Md. 177, 184, 502 A.2d 496, 499 (1986).

In the present case, as we have seen, the court found the description supplied by the chemist to be sufficient to prove that the substance analyzed was a proscribed Schedule IV controlled substance. The chemical analysis did not just identify the substance analyzed as "Cathine IV CDS," it also identified the material submitted for analysis as "One (1) bundle of a greenish brown vegetable matter with a long greenish red stem, suspected (KHAT)." [8] A rational inference

---

8. The second page of the Federal Register states:

to be drawn from this evidence by a trier of fact is that Cathine IV CDS is the same substance that is controlled under federal law. We reject, therefore, the appellant's argument that "the Court has no way of knowing that cathine is or is not the same as cathine ((+) − norpseudophedrine)." Appellant's Reply Brief at 9.

*JUDGMENT AFFIRMED, WITH COSTS.*

In the October 30, 1987 notice of proposed rule making, comments were solicited from persons interested in the proposed control action. DEA received comments regarding the proposed control of cathine ((+) − norpseudophedrine) and its impact on the use of the plant known as khat. Following a review of the information available on the chemical constituents found in khat, it has been determined that *khat will be subject to the same Schedule IV controls as cathine ((+) − norpseudophedrine), one of the psychoactive substances found in khat. Such a position is consistent with the controls imposed on many other plants containing controlled psychoactive substances.*
53 Fed.Reg. 17459 (1988) (emphasis added).