Richard Alan CURRY *v.* STATE of Arkansas

CR 82-157                                    649 S.W.2d 833

Supreme Court of Arkansas
Opinion delivered May 2, 1983
[Rehearing denied May 16, 1983.]

*John Wesley Hall, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Richard Alan Curry, was convicted of the crime of possession of a controlled substance, methaqualone, under the Arkansas Uniform Controlled Substances Act. On appeal he contends that the Act must be declared invalid for either of two reasons: First, it is an unconstitutional delegation of legislative authority and, second, it violates the fair notice requirements of due process of law. We affirm the convic-

tion. Jurisdiction is in this Court since the appeal involves a challenge to the constitutionality of an act of the General Assembly. Rule 29 (1) (a) and (c).

I

The doctrine of separation of powers is well established in Arkansas. Ark. Const. Art. IV, §§ 1, 2; amend. VI, § 2; amend. VII, § 1. The authority to define crimes and fix the punishment for those crimes is vested exclusively in the legislative branch of government. If an act is incomplete and authorizes a commission to decide what shall and what shall not be a violation of the law it will be held unconstitutional as an improper delegation of legislative authority. *Trice* v. *City of Pine Bluff,* 279 Ark. 125, 649 S.W.2d 179 (1983). However, the limitation against the delegation of lawmaking power does not prevent the General Assembly from authorizing boards or commissions to determine facts upon which the law would be put into execution. *McArthur* v. *Smallwood,* 225 Ark. 328, 331, 281 S.W.2d 428, 431 (1955).

The act at issue is a Uniform Act which has been adopted in 46 states, the Virgin Islands and Puerto Rico. It is comprised of six articles: Definitions, Standards and Schedules, Regulation of Distribution by Prescription, Criminal Penalties, Enforcement and Administrative Provisions, and Procedure and Title. Appellant contends that Article II, the determination of controlled substances article, is unconstitutional. That article embraces six different schedules of controlled substances which are codified in 16 statutes, Ark. Stat. Ann. §§ 82-2602 through 82-2614.3 (Repl. 1976 & Supp. 1981). Appellant makes numerous arguments in favor of his contention. For example, in oral argument he contended that the distinctions between Schedule III substances, Ark. Stat. Ann. § 82-2608 (Supp. 1981), and Schedule IV substances, Ark. Stat. Ann. § 82-2610 (Supp. 1981) are so slight that the General Assembly had abdicated to the executive branch its duty to decide what shall and what shall not constitute a crime. He makes similar arguments with regard to Schedules V and VI. He challenges each of the six Schedules contained in Art. II. However, we do not reach constitutional issues on such a broad basis. A party has

standing to challenge the constitutionality of a statute only so far as it affects his own rights. *Bushong* v. *State,* 267 Ark. 113, 589 S.W.2d 559 (1979). Traditionally we do not decide constitutional issues on a broader basis than the record requires. Since we will not pass on the validity of any part of the Arkansas Uniform Controlled Substances Act now shown to have been violated, our review will be limited to the statute under which appellant was convicted, Schedule II or Ark. Stat. Ann. § 82-2606 (Supp. 1981).

The Arkansas Uniform Controlled Substances Act became law in 1971. 1971 Ark. Acts 590. The 1981 Act listed the substances which were contolled pursuant to Schedule II, 1971 Ark. Acts 590, Art. 2, § 6 (codified at Ark. Stat. Ann. § 82-2607 [Repl. 1976]). The original act and all of its amendments provide for a commissioner who could add to, delete, or reschedule the substances enumerated by using certain criteria. Ark. Stat. Ann. §§ 82-2602, -2606 (Supp. 1981). The listing of substances in Schedule II was repeated by § 23 of Act 898 of 1979 which provided that the schedules in effect on the effective date of the Act should remain in effect until rescheduled by the Commissioner. The original act and all amendments provide that if a substance becomes controlled under federal law it shall also become controlled under state law unless the Commissioner objects to its inclusion. Ark. Stat. Ann. § 82-2602 (d) (Repl. 1976 & Supp. 1981).

The facts which create the narrow issue in this case are that methaqualone was classified as a Schedule II controlled substance by the federal government effective October 4, 1973. Notice of that Ruling was given in the Federal Register. 38 Fed. Reg. 27516 (1973). The state Commissioner did not object to methaqualone becoming a controlled substance and so, by operation of law, it became controlled in this State. *See* Ark. Stat. Ann. § 82-2602 (d) (Supp. 1981). Upon this factual basis, two questions concerning delegation arise: (1) Whether there was an unlawful delegation to the federal government, and (2) whether there was an unlawful delegation to the Commissioner.

In answer to the first question appellant argues that prior to 1979, federal modifications of the schedules resulted

in automatic modifications of the Arkansas schedules under our law. Since methaqualone was scheduled prior to 1979, appellant argues that the Arkansas Uniform Controlled Substances Act unconstitutionally delegated legislative determinations of what a controlled substance is to the Federal Register.

If appellant's argument was factually correct and, in those years prior to 1979 when methaqualone was listed, the legislature had given to the federal government all control over scheduling, there would have been an unlawful delegation of authority. *Cheney* v. *St. Louis & Southwest Railway Co.*, 239 Ark. 870, 394 S.W.2d 731 (1965); *Crowley* v. *Thornborough*, 226 Ark. 768, 294 S.W.2d 62 (1956). However, contrary to appellant's assertions, the original act of 1971, the 1973 amendment and the 1979 amendment all gave the Commissioner authority to reject the listing of any federally controlled substance. 1971 Ark. Acts 590, § 1 (d), p. 1321; 1973 Ark. Acts 186 § 1, p. 640 (codified at Ark. Stat. Ann. § 82-2602 (d) [Repl. 1976]); 1979 Ark. Acts. 898 § 3, p. 1977 (codified at Ark. Stat. Ann. § 82-2602 (d) [Supp. 1981]). Thus there was no unlawful control or delegation of legislative power given to the federal government.

The obvious succeeding question is whether Schedule II of the Arkansas Uniform Controlled Substances Act constitutes an unlawful delegation of legislative authority to the Commissioner. The General Assembly has defined the type of possession of a controlled substance which will constitute a crime. It has mandated that no substance shall be listed as controlled unless it has a potential for abuse and a history or pattern of abuse. In addition, the following are considered: The significance of that pattern of abuse, the risk to the public, the substance's potential to produce psychic or psychological dependence viewed in the light of current scientific knowledge, the scientific evidence of its pharmacological effect, if known, and whether the substance is an immediate precursor of an already controlled substance. Ark. Stat. Ann. § 82-2602 (a) (Repl. 1976 & Supp. 1981). The General Assembly more particularly defined Schedule II substances as those which have a high potential for abuse but are currently accepted in medical use, and the

abuse of which may lead to severe psychic or physical dependence. Ark. Stat. Ann. § 82-2606 (Repl. 1976 & Supp. 1981). These are illuminating criteria which direct the Commissioner to reject any federal listings which might not be in conformity with them. They guide the Commissioner in determining the facts upon which the law is to be put into execution. They are not vacant standards which allow a Commissioner to determine what shall and what shall not constitute a crime. The General Assembly has not abdicated its legislative authority.

We are not unmindful of contrary decisions from other jurisdictions. *See, e.g., State* v. *Krego,* 433 N.E.2d 1298 (Ohio Misc. 1981); *State* v. *Rodriguez,* 379 So.2d 1084 (La. 1980); *State* v. *Gallion,* 572 P.2d 683 (Utah 1977); *Sundberg* v. *State,* 216 S.E.2d 332 (Ga. 1975); *Howell* v. *State,* 300 So.2d 774 (Miss. 1974). Some of these cases are distinguishable because of wording differences in the pertinent schedule or statute. However, the majority of jurisdictions hold in accord with our view. *See, e.g., Ex parte McCurley,* 390 So.2d 25 (Ala. 1980) (involving the identical Schedule II); *State* v. *Lovelace,* 585 S.W.2d 507 (Mo. 1979); *State* v. *Uriel,* 255 N.W.2d 788 (Mich. 1977); *State* v. *King,* 257 N.W.2d 693 (Minn. 1977); *Threlkeld* v. *State,* 558 S.W.2d 472 (Tex. Crim. 1977); *Cassell* v. *State,* 317 So.2d 348 (Ala. 1975); *State* v. *Lisk,* 204 S.E.2d 868 (N.C. 1974); *Hilton* v. *State,* 503 S.W.2d 951 (Tenn. 1973); *Hohnke* v. *Commonwealth,* 451 S.W.2d 162 (Ky. 1970); *State* v. *Davis,* 450 S.W.2d 168 (Mo. 1970); *State* v. *Sargent,* 449 P.2d 845 (Or. 1969). *See also* Annot., 47 A.L.R. Fed. 869 (1980) (sets out the analogous federal cases which have unanimously held in accord with our majority view).

This decision is based solely on principles of law but we are not unmindful that it is also a practical one. The General Assembly meets in regular session only 60 days every other year. This infrequency of sessions does not offer timeliness to the amorphous and ubiquitous problems associated with the manufacture and distribution of illicit drugs. In addition, even if the members of the General Assembly were all trained chemists and pharmacists, which they are not, it would be impossible for them to keep abreast of the constantly changing drugs and their dangers. A Commis-

sioner with specialized knowledge of these changes can schedule substances in a timely manner.

This interpretation of the Act is consistent with our well-established rule of statutory interpretation that an act of the legislature is presumptively constitutional and all doubt as to its validity must be resolved in favor of the act unless it is clearly incompatible with our constitution. *Redding* v. *State,* 254 Ark. 317, 493 S.W.2d 116 (1973).

II

Appellant next contends that he was denied fair notice that possession of methaqualone constituted a crime and, therefore, he was denied due process. The Arkansas Uniform Controlled Substances Act requires that the schedule be published in accordance with the Administrative Procedure Act, Ark. Stat. Ann. § 5-703 (Repl. 1976 & Supp. 1981). Appellant does not contend that the notice provisions of the Administrative Procedure Act were not complied with. Instead, he cites 3 Ark. Reg. 1068-69 and argues that he lacked notice because the schedules were not published in the Arkansas Register. However, the schedules were in fact published with methaqualone appearing as a Schedule II substance in 1 Ark. Reg. 915 at page 918 and 2 Ark. Reg. 372 at page 375. Therefore, appellant's argument has no merit.

The appellant makes a three sentence argument which might be construed as a contention that compliance with the Arkansas Administrative Procedures Act is not sufficient to comport with the constitutional requirements of due process. However, the appellant offers no convincing argument or citation of authority. Thus we do not consider it. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977).

Affirmed.