The Honorable Sid Rosenbaum State Representative 2902 Hinson Road Little Rock, Arkansas 72212-2747
Dear Representative Rosenbaum:
I am writing in response to your request for an opinion on the following question:
 Federal law United States Code Title 26, Chapter 53, Sec. 5845(a) states that the term "firearm" shall not include an antique firearm or antique device et al. Because Arkansas Code 5-73-103 authorizes the Bureau of Alcohol, Tobacco and Firearms to grant exceptions, would a convicted felon as outlined in 5-73-103(1) be allowed to hunt with a muzzle loader?
RESPONSE
It is my opinion that the answer to your question is "no," the existence of this federal law alone does not authorize such a person to possess a muzzle-loader. Section 5-73-103 does not amount to a wholesale adoption of federal law on the point. The reference in A.C.A. § 5-73-103 to the Bureau of Alcohol, Tobacco and Firearms ("ATF")[1] authorizing firearm possession requires that agency to make an individualized determination with regard to a particular felon. The fact that federal law may not prohibit possession of certain muzzle-loading weapons is not tantamount to a finding that ATF has "authorized" the possession with regard to a particular felon, as contemplated by A.C.A. § 5-73-103. When this portion of A.C.A. § 5-73-103 was adopted, the ATF had authority to make such individualized determinations. At the present time, however, federal law does not allow the ATF to make such determinations. In my opinion, therefore, a convicted felon may not hunt with a muzzle-loader absent authorization from the Governor pursuant to A.C.A. § 5-73-103.
The relevant Arkansas statute, as you note, is A.C.A. § 5-73-103
(Supp. 2003). It provides in pertinent part that:
 (a) Except as provided in subsection (d) of this section or unless authorized by and subject to such conditions as prescribed by the Governor, or his designee, or the Bureau of Alcohol, Tobacco, and Firearms of the United States Treasury Department, or other bureau or office designated by the Treasury Department, no person shall possess or own any firearm who has been:
(1) Convicted of a felony. . . .
* * *
 (b) A determination by a jury or a court that a person committed a felony:
 (1) Shall constitute a conviction for purposes of subsection (a) of this section even though the court suspended imposition of sentence or placed the defendant on probation; but
 (2) Shall not constitute a conviction for purposes of subsection (a) of this section if the person is subsequently granted a pardon explicitly restoring the ability to possess a firearm.
* * *
 (d) The Governor shall have authority, without granting a pardon, to restore the right of a convicted felon or an adjudicated delinquent to own and possess a firearm upon the recommendation of the chief law enforcement officer in the jurisdiction in which the person resides, so long as the underlying felony or delinquency adjudication:
(1) Did not involve the use of a weapon; and
(3) Occurred more than eight (8) years ago.
(Emphasis added).
This statute, commonly referred to as the "felon in possession" statute, prohibits the possession of "firearms" by convicted felons. The term "firearm" is not defined in the applicable subchapter, but is defined for purposes of the entire Criminal Code[2] at A.C.A. § 5-1-102(6) (Supp. 2003) as follows:
 "Firearm" means any device designed, made, or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use, including such a device that is not loaded or lacks a clip or other component to render it immediately operable, and components that can readily be assembled into such a device. . . .
This definition does not exclude antique firearms. One of my predecessors therefore concluded that a muzzle-loading weapon was a "firearm" for purposes of this statute. See Op. Att'y. Gen. 95-275. My predecessor reasoned:
 It is my understanding that the term "muzzle loader" is commonly used to describe a pistol or long gun that is loaded by introducing gunpowder, wadding, and a ball or other projectile through the muzzle of the weapon. The gunpowder is ignited by a spark from a flint or other substance, and the resulting explosion of the gunpowder propels the projectile from the weapon. Because it is made to expel a projectile by the action of an explosive (i.e., gunpowder), it is my opinion that such a weapon is a firearm within the meaning of A.C.A. §§ 5-1-102(6) and 5-73-[103].
Id. at 1-2 (footnote omitted).
Your question, however, focuses on one of the exceptions to A.C.A. §5-73-103, concerning authorization by the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department or other bureau or office designated by the Treasury Department. The Arkansas statute, in subsection (a) above, provides an exception where the firearm possession is authorized by the ATF.
Specifically, you reference the definitions contained in 26 U.S.C. § 5845
in this regard, which are located in a subchapter of federal law governing registration and identification of firearms. See26 U.S.C. §§ 5841-5849 (the "National Firearms Act"). You note that26 U.S.C. § 5845(a) defines "firearm" as excluding "antique firearms." The actual language states that "[t]he term `firearm' shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." The term "antique firearm" is further defined at 26 U.S.C. § 5845(g) as meaning "any firearm not designed or redesigned for using rim fire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898 (including any matchlock, flintlock, percussion cap, or similar type of ignition system or replica thereof, whether actually manufactured before or after the year 1898) and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade."
Your question is therefore whether, "[b]ecause A.C.A. § 5-73-103
authorizes the [ATF] to grant exceptions," a convicted felon would be allowed to hunt with a muzzle loader in Arkansas. In my opinion the answer is "no."
As an initial matter, I do not believe the definitions found at26 U.S.C. § 5845 are the relevant provisions. Federal law also addresses the possession of firearms at 18 U.S.C. §§ 921 to -930 (the "Gun Control Act of 1968"). Subsection (g) of 18 U.S.C. § 922 makes it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess, in or affecting commerce, any firearm or ammunition. "Firearm" is also defined in18 U.S.C. § 921(a)(3) as excluding an "antique firearm." "Antique firearm" is defined at 18 U.S.C. § 921 (a)(16) as follows:
The term "antique firearm" means —
 (A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; or
 (B) any replica of any firearm described in subparagraph (A) if such replica —
 (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or
 (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; or
 (C) any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder, or a black powder substitute, and which cannot use fixed ammunition. For purposes of this subparagraph, the term "antique firearm" shall not include any weapon which incorporates a firearm frame or receiver, any firearm which is converted into a muzzle loading weapon, or any muzzle loading weapon which can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof.
Thus, convicted felons are not prohibited by federal law from possessing certain types of muzzle-loading weapons, assuming the weapons meet the definitions above. This does not end the inquiry, however, for purposes of Arkansas law, as expressed in A.C.A. § 5-73-103. Again that statute prohibits convicted felons from possessing firearms as defined in A.C.A. § 5-1-102(6). It makes no exception for antique weapons or muzzle-loaders. Section 5-73-103 does make an exception, however, for instances in which the ATF or other bureau or office designated by the Treasury Department authorizes the possession. In my opinion this reference to authorization by the ATF does not amount to a wholesale adoption of federal law on the point, but refers, rather, to an individualized determination by ATF that a particular felon should be granted relief from firearms restrictions.
This particular exception language of A.C.A. § 5-73-103 was added by Act 74 of 1987. That act was entitled "AN ACT to Amend Section 3103 of Act 280 of 1975, as Amended [Ark. Stat. 41-3103], to Provide that no Convicted Felon or Mentally Incompetent Person May Own or Possess a Firearm Unless Authorized by the Governor or the Bureau of Alcohol, Tobacco and Firearms; and for other Purposes." Act 74 of 1987 added what is now the exception language in A.C.A. § 5-73-103: "unless so authorized by and subject to such conditions as prescribed by the Governor (or his designee) or the U.S. Treasury Department's Bureau of Alcohol, Tobacco and Firearms (or other bureau of office designated by the Treasury Department)." Relevant for our purposes is the emergency clause of Act 74, (Section 3), which provides as follows:
 It is hereby found and determined by the General Assembly that any person who has been convicted of a felony or adjudicated a mental defective or involuntarily committed to a mental institution may not possess or own any firearms; that this language is unfairly broad and that a mechanism should be devised whereby persons who constitute no danger to themselves or others should not be restricted for the duration of their lives from owning or possessing firearms; that this Act establishes a mechanism to allow the Governor or the Bureau of Alcohol, Tobacco and Firearms to determine which such persons should be relieved of such restriction; that the inequity of the present law will continue until this Act becomes effective. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.
Emphasis added.
This language indicates an intention that the relief granted by the added language be on a felon-by-felon basis, whether granted by the Governor or the ATF. The exception language is not, in my opinion, nor could it be,[3] a wholesale adoption of federal law as implemented by the ATF. That is, it is not the intention of A.C.A. § 5-73-103(a) to allow felons to possess or own particular or any weapons to the exact same extent authorized by federal law, as implemented by the ATF. It was rather, the intention to authorize ATF to grant exemptions for particular persons making application to ATF for such relief. Obviously, an Arkansas statute cannot dictate the actions of a federal agency. In my opinion, therefore, the intention of Act 74 of 1987 was to authorize particular felons in Arkansas to possess firearms where the ATF made an individualized determination as to that felon under existing federal law.
In this regard, Title 18 of the United States Code, at § 925(c), authorizes convicted felons to apply to the Secretary of the Treasury "for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms," and states that "the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."
As noted in Black v. Snow, 272 F.Supp.2d 21 (D.C.C. 2003), "[i]n 1972, the Secretary delegated this authority to ATF, where it has remained ever since." Id. at 23. The court also noted that "[a]t the time of this original delegation, ATF was part of the Treasury Department. Effective January 24, 2003, however, the Homeland Security Act moved the Bureau (rechristened as the "Bureau of Alcohol, Tobacco, Firearms, and Explosives") to the Department of Justice, and transferred the Secretary of the Treasury's power to act upon § 925(c) applications to the Attorney General. See Pub.L. No. 107-296, title XI, 116 Stat. 2135 (Nov. 25, 2002). Soon thereafter, the Attorney General delegated that authority back to ATF. See 28 C.F.R. § 0.130(a)(1); 68 Fed. Reg. 4923, 4926 (Jan. 31, 2003). . . ." Id. at 23.
The court in Black also noted, however, that "[m]ore relevant is Congress' decision, first made in 1992 and continued each year thereafter, to prohibit the federal funds appropriated annually for ATF from being used "to investigate or act upon applications for relief from Federal firearm disabilities under 18 U.S.C. § 925(c)." Treasury, Postal Service and General Government Appropriations Act, Pub.L. No. 102-393,106 Stat. 1729, 1732 (Oct. 6, 1992).[4] To the present day, every ensuing ATF appropriation has contained the same restriction on the processing of individual applications. . . . Bound by this prohibition, ATF now simply returns any individual application that it receives with an explanation that it is permitted to do no more." Id. at 24. See also,United States v. Bean, 537 U.S. 71 (2002) (federal courts had no jurisdiction to review inaction of ATF in refusing to pass upon an18 U.S.C. § 925(c) application; an actual denial of relief by ATF was required to trigger judicial review under that subsection).
Under current federal law, therefore, the ATF is not allowed to make individualized determinations as to which felons may own or possess firearms. In my opinion, as a consequence, the portion of A.C.A. §5-73-103 that refers to authorization by the ATF may not be currently employed by a felon to regain Arkansas firearms rights. That is, a convicted felon does not have the current option to apply with the ATF for relief from federal firearms restrictions, so as to regain the right to possess a firearm for purposes of state law as provided by A.C.A. §5-73-103. Current federal law makes this ATF mechanism unavailable.
This is the current state of the law regarding the "ATF" exception in A.C.A. § 5-73-103(a). Your question provides a slight twist on this line of analysis, however. Your question is whether, because federal law does not prohibit the possession of certain muzzle-loading weapons by felons (and therefore it would be unnecessary for such a felon to even apply for relief to the ATF under federal law), such a felon may lawfully possess a muzzle-loading weapon under state law. In my opinion, as noted above, the answer to this question is "no." Again, the Arkansas statute does not make any exception for antique weapons. It prohibits the possession or ownership of "firearms" by felons. A muzzle-loader is a firearm for purposes of state law. See, Op. Att'y Gen. 95-275. The statute provides two exceptions, one being an individualized determination by ATF that the particular individual may possess a firearm.[5] The legislative intent, in my opinion, was to allow an individual determination by ATF that a particular person would "constitute no danger to themselves or others" (see Acts 1987, No. 74, § 3), prior to the exception being applicable. The mere existence of federal law excepting certain muzzle-loading weapons from the definition of "firearm" does not amount to an individual determination for purposes of A.C.A. § 5-73-103 that such person "constitutes no danger to themselves or others." As a consequence, the mere existence of this federal law is not tantamount to the exception being met in a particular case. Our statute is not a wholesale adoption of federal law on possession of firearms by felons, it merely authorizes state law possession where ATF has made an individualized determination that a particular felon should be relieved of the restriction.
As a consequence, in my opinion a convicted felon may only own or possess a muzzle-loader under state law if he or she has met the other exception language contained in A.C.A. § 5-73-103(a) or (d), allowing the Governor to restore the right to own or possess a firearm.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Effective January 24, 2003, the federal "Homeland Security Act" moved the Bureau (renamed the "Bureau of Alcohol, Tobacco, Firearms, and Explosives") from the Treasury Department to the Department of Justice.
[2] Section 5-73-103 is a part of the "Arkansas Criminal Code."See notes to A.C.A. § 5-1-101.
[3] The prospective adoption of provisions of federal law in an Arkansas statute can lead to an unlawful delegation of state legislative power to the federal government. See, e.g., Curry v. State, 279 Ark. 153,649 S.W.2d 833 (1983), citing Cheney v. St. Louis Southwest RailwayCo., 239 Ark. 870, 394 S.W.2d 731 (1965) and Crowley v. Thornborough,226 Ark. 768, 294 S.W.2d 62 (1956).
[4] The court also stated "[i]n enacting the restriction each year since 1992, Congress has sent a clear signal that it wished to disable the firearms relief provision. The legislative history of the ban confirms this. See S. REP. NO. 102-253 (July 31, 1992); H.R. REP. NO. 102-618 (June 25, 1992). As the Third Circuit recently observed, these committee reports "indicate that Congress wanted to suspend § 925(c)'s relief procedure because it was concerned that dangerous felons were regaining their firearms privileges and because it believed that the resources allocated to investigating felons' applications would be better used to fight crime." Pontarelli v. Dep't of Treasury, 285 F.3d 216, 226 (3d Cir. 2002); see also United States v. McGill, 74 F.3d 64, 67 (5th Cir. 1996) ("By withdrawing funds to the ATF to process these applications under these circumstances and with this explanation by the appropriations committee, it is clear to us that Congress intended to suspend the relief provided by § 925(c)"). Id. at 27.
[5] As noted by the United States Supreme Court, "[w]hether an applicant is `likely to act in a manner dangerous to public safety' presupposes an inquiry into that applicant's background — a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation. Similarly, the "public interest" standard calls for an inherently policy-based decision best left in the hands of an agency." United Statesv. Bean, 537 U.S. 71, 77 (2002).