COMMONWEALTH of Kentucky, Appellant

v.

Frank D. HAMILTON and Heather Cole, Appellees.

No. 2011–SC–000227–DG.

Supreme Court of Kentucky.

Oct. 24, 2013.

Jack Conway, Attorney General of Kentucky, James Coleman Shackelford, Assistant Attorney General, for Appellant.

Donn Randall Jewell, Travis Alan Rossman, for Appellees.

Opinion of The Court By Chief Justice MINTON.

Frank D. Hamilton and Heather Cole entered conditional guilty pleas to second-degree trafficking in a controlled substance, first offense. In particular, Hamilton and Cole were convicted for dealing in Suboxone, the trade name of a specific drug containing buprenorphine. Under Kentucky law, the Cabinet for Health and Family Services designated buprenorphine as a Schedule III controlled substance. The focus of this case is on Hamilton and Cole's efforts to challenge the Cabinet's reclassification of buprenorphine in 2002 from a Schedule V to Schedule III controlled substance, a change that came about as a result of a change in federal law.

Before the trial court, Hamilton and Cole made motions challenging the scientific evidence used in classifying buprenorphine as a Schedule III controlled substance and the findings purportedly required by the Cabinet before rescheduling buprenorphine. The trial court ruled that the General Assembly's delegation of legislative authority to the Cabinet, and in turn, the federal government, was proper; and, further, to the extent Hamilton and Cole wish to challenge the methods used by the federal Drug Enforcement Administration, the trial court found it lacked subject matter jurisdiction. Hamilton and Cole appealed the decision to the Court of Appeals, which found in their favor. In a terse opinion, the Court of Appeals remanded this case to the trial court with directions to name the Attorney General and the Cabinet as parties.

We granted discretionary review. We now reverse the opinion of the Court of Appeals. We hold that a trial court does have subject matter jurisdiction to rule on a challenge to the Cabinet's scheduling of a controlled substance following federal action. A trial court may take judicial notice of the federal regulation used by the Cabinet and make a determination whether the findings comport with the requirements of Kentucky law. And, contrary to the remand directive of the Court of Appeals, the Attorney General and the Cabinet are not necessary parties.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 2008, a grand jury indicted Hamilton and Cole for trafficking in a synthetic opiate, Suboxone. Suboxone is the trade name for a drug containing two active ingredients, buprenorphine and naloxene. Under both Kentucky and federal law, buprenorphine is regulated as a Schedule III drug, having been changed by regulation from a Schedule V drug in 2002. Hamilton and Cole both mounted a defense centered on challenging the validity of Suboxone's Schedule III classification.[1]

Hamilton and Cole, as well as the Commonwealth, requested information from the Cabinet regarding Suboxone's rescheduling. But the Cabinet consistently responded that it possessed no records pertaining to the reclassification. Following various motions, including a motion to dismiss the indictment, the trial court ordered an evidentiary hearing to determine any issues with the Cabinet's classification of Suboxone. Before the hearing, Hamilton and Cole provided notice to the Attorney General of their intended challenge to Suboxone; but the Attorney General declined the invitation to participate in the

---

1. The regulation, 902 KAR 55:025(7), classifies any "material, compound, mixture, or preparation which contains any quantity of buprenorphine, or its salts" as Schedule III.

proceedings. The record does not indicate any argument up to this point in the proceedings by Hamilton and Cole regarding the constitutionality of KRS 218.020(3).

At the evidentiary hearing, the parties stipulated that the Cabinet, in altering the classification of buprenorphine, relied upon the ability granted by the General Assembly to "similarly control" any substance that is "designated, rescheduled, or deleted as a controlled substance under federal law." [2] Hamilton and Cole briefly argued that the General Assembly's delegation of legislative authority to the Cabinet, as well as the federal government, was improper. But the thrust of their argument was that the Cabinet had not suitably followed any established adequate standards in promulgating the regulation reclassifying buprenorphine. Particularly, Hamilton and Cole strongly asserted that the Cabinet did not make the statutorily required findings pertaining to the effects of buprenorphine [3] and the reasoning for controlling it.[4]

Hamilton and Cole called two witnesses at the evidentiary hearing. Harry Plotnick, an Ohio-licensed attorney with a Ph.D. in toxicology, testified regarding the procedures employed by the DEA in designating buprenorphine a Schedule III drug. According to Plotnick, the DEA improperly characterized buprenorphine's potential for abuse, relied solely on European studies, and provided no tests involving Suboxone. At the time of the federal government regulation, Suboxone was not on the market in the United States. Additionally, Hamilton and Cole called Chris Johnson, a licensed pharmacist employed by the Cabinet. Hamilton and Cole repeatedly questioned Johnson about the Cabinet's findings relating to Suboxone. Although Johnson was knowledgeable about Suboxone, he was unable to shed any light on the findings made by the Cabinet or the procedure the Cabinet undertook when rescheduling buprenorphine.

The Commonwealth argued to the trial court that the gravamen of Hamilton and Cole's position was that KRS 218A.020(3) is unconstitutional. And the Commonwealth asserted that Hamilton and Cole were in the wrong forum to challenge the methodology used by the DEA to classify buprenorphine. By the Commonwealth's reasoning, Hamilton and Cole could not challenge the methodology used by the DEA in state court because only a federal court would have subject matter jurisdiction over the actions of a federal agency. But the Cabinet, according to the Commonwealth, acted wholly within its power in adopting the federal schedule of buprenorphine.

The trial court denied Hamilton and Cole's motion to dismiss the indictment. In denying the motion, the trial court ruled that the General Assembly's delegation of authority to the Cabinet was proper and constitutional. According to the trial court, KRS 218A.020(3) expressly allows the Cabinet to adopt the federal scheduling of a controlled substance. But the trial court did rule that it was without subject matter jurisdiction to the extent Hamilton and Cole sought to challenge the procedures used by the DEA. The trial court held that Hamilton and Cole, if they wished to challenge the DEA, must do so in federal court before proceeding in the criminal case. Following the trial court's ruling, Hamilton and Cole entered condi-

2. KRS 218A.020(3).

3. Throughout the hearing, Hamilton and Cole attempted to separate Suboxone from buprenorphine. However, it is indisputable that Suboxone does indeed contain buprenor-phine; and buprenorphine is a Schedule III controlled substance.

4. See KRS 218A.080.

tional guilty pleas and their sentences were probated.

The Court of Appeals reversed the trial court and remanded for a hearing on the constitutionality of KRS 218A.020(3). According to the Court of Appeals, the trial court's ruling called the constitutionality of KRS 218A.020(3) into question because it effectively allowed the Cabinet, based on federal law, to change Kentucky law, thereby preventing this state's judiciary from reviewing the regulation's validity. The Court of Appeals found the statute's constitutionality an issue despite not being argued at the trial court. Surprisingly, the Court of Appeals found that the Attorney General and the Cabinet must be added as necessary parties to the action on remand.

The Commonwealth appealed the decision of the Court of Appeals. And we granted discretionary review to clear up the confusion engendered by the General Assembly's delegation to the Cabinet. We now reverse the Court of Appeals and remand to the trial court.

## II. ANALYSIS.

On appeal, the Commonwealth challenges various aspects of the decision by the Court of Appeals. First, the Commonwealth claims the Court of Appeals correctly found Hamilton and Cole failed to notify the Attorney General of a constitutional challenge, as statutorily required, but erred in remanding the case rather than simply not reviewing the issue or exercising palpable error review. Second, the Commonwealth agrees with the Court of Appeals that the Cabinet should have been added as a party but argues the proper remedy was to dismiss the appeal rather than to remand the case. Finally, the Commonwealth argues KRS 218A.080 is constitutional; and the trial court correctly concluded it does not have the au-

thority to strike down a federal regulation. Hamilton and Cole dispute each of these claims with the exception that the parties agree the Attorney General should not be added as a party to this action. We engage in de novo review of the issues presented.

We exercise discretion and decide not to review the issue of proper notification to the Attorney General for a constitutional challenge. In our view, the Court of Appeals erred in relying on this ground in its opinion, especially in light of its failure to cite any legal support for its holding. Hamilton and Cole, from the initiation of proceedings in this case, have sought to challenge the Cabinet's regulation and findings. The genesis of the issue of constitutionality in this litigation is unclear. It may have arisen in response to the Commonwealth's initial argument at the evidentiary hearing that the trial court does not have subject matter jurisdiction over the federal regulation in issue; and, as a result, Hamilton and Cole must go to federal court for the relief they seek. But the trial court also ruled on the constitutionality of KRS 218A.080(3). And Hamilton and Cole have mentioned it repeatedly.

Our decision today does not require us to decide the constitutionality of KRS 218A.080(3) because we find that the trial court had subject matter jurisdiction to rule on Hamilton and Cole's initial argument regarding the validity of the regulation. As a result, Hamilton and Cole may obtain relief in the trial court on the validity of buprenorphine's classification. Of course, if constitutionality is raised at the trial court, KRS 418.075—as well as CR 24.03, made applicable to criminal proceedings through RCr 13.04—mandates the Attorney General be notified. The record below indicates the Attorney General was not notified of any constitutional challenge before the trial court's judgment was en-

tered. Normally, this Court refuses review when KRS 418.075 is not satisfied.[5] And if constitutionality arises on remand, the Attorney General is not a necessary party as the Court of Appeals erroneously determined. As we discuss below, notice to the Attorney General is required but not his participation as a party to the case.

## A. The Trial Court has Subject Matter Jurisdiction to Rule on Hamilton and Cole's Challenge to the Cabinet's Scheduling of Buprenorphine.

We do agree, on different grounds, with the Court of Appeals that the case should be remanded to the trial court for further proceedings. We read KRS 218A.020(3) to be a separate procedure for scheduling controlled substances available to the Cabinet. And we hold that the trial court does have subject matter jurisdiction to hear claims regarding the Cabinet's actions under KRS 218A.020(3).

Hamilton and Cole argue that the Cabinet, in promulgating the regulation placing buprenorphine in Schedule III, did not follow the established adequate standards outlined in KRS 218A.080. Additionally, Hamilton and Cole argue that we should find the trial court has subject matter jurisdiction to rule on the classification of buprenorphine. The trial court ruled that subject matter jurisdiction was lacking because Hamilton and Cole were seeking the invalidation of action taken by a federal agency. We disagree with the notion that the trial court lacks subject matter jurisdiction to hear any challenge to the Cabinet's actions under KRS 218A.020(3). The invalidation of action by a federal agency is not involved in this matter.

As we have consistently noted, "[s]ubject matter jurisdiction of each Court within the Court of Justice is established by the constitutional provisions and statutes assigning to the courts specific types of claims and causes of actions[.]"[6] And, generally speaking, circuit courts are courts of general jurisdiction, capable of hearing "all justiciable causes not vested in some other court."[7] Subject matter jurisdiction "does not mean 'this case' but '*this kind of case.*'"[8] Further, a court is deprived of subject matter jurisdiction only "where that court has not been given, by constitutional provision or statute, the power to do anything at all."[9] It is our opinion that the trial court simply misconstrued the issue in determining that in order to rule on Hamilton and Cole's challenge, federal action would be reviewed and possibly invalidated. Of course, a state court does not have jurisdiction over a federal agency;[10] but this case does not necessitate that type of review. The trial court certainly has jurisdiction to "review the actions or decisions of administrative agencies"[11] of this Commonwealth. For the reasons set forth below, we view this action as dealing with the validity of the action of a state agency rather than a federal agency. Accordingly, the trial court's subject matter jurisdiction was never really in question.

5. *See, e.g., Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky.2008) (citing *Hayes v. Commonwealth*, 175 S.W.3d 574, 589 (Ky. 2005)).

6. *Daugherty v. Telek*, 366 S.W.3d 463 (Ky. 2012) (citations omitted).

7. Ky. Const. § 112(5); KRS 23A.010.

8. *Daugherty*, 366 S.W.3d at 467.

9. *Id.*

10. *See Western & Southern Life Ins. Co. v. Smith*, 859 F.2d 407, 409 n. 4 (6th Cir.1988).

11. KRS 23A.010(4).

The relevant portions of KRS 218A.020 and KRS 218A.080 are provided below:

KRS 218A.020

(1) The Cabinet for Health and Family Services shall administer this chapter and may by regulation add substances to or delete or reschedule all substances enumerated in the schedules set forth in this chapter. In making a determination regarding a substance, the Cabinet for Health and Family Services may consider the following:

(a) The actual or relative potential for abuse;

(b) The scientific evidence of its pharmacological effect, if known;

(c) The state of current scientific knowledge regarding the substance;

(d) The history and current pattern of abuse;

(e) The scope, duration, and significance of abuse;

(f) The risk to the public health;

(g) The potential of the substance to produce psychic or physiological dependence liability; and

(h) Whether the substance is an immediate precursor of a substance already controlled under this chapter.

(2) After considering the factors enumerated in subsection (1) of this section, the Cabinet for Health and Family Services may adopt a regulation controlling the substance if it finds the substance has a potential for abuse.

(3) If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the Cabinet for Health and Family Services, the Cabinet for Health and Family Services may similarly control the substance under this chapter by regulation.

KRS 218A.080

The Cabinet for Health and Family Services shall place a substance in Schedule III if it finds that:

(1) The substance has a potential for abuse less than the substances listed in Schedules I and II;

(2) The substance has currently accepted medical use in treatment in the United States; and

(3) Abuse of the substance may lead to moderate or low physical dependence or high psychological dependence.

This Court previously reviewed sections (1) and (2) of KRS 218A.020 in *Commonwealth v. Hollingsworth*.[12] For contextual purposes regarding its operation, we find it important briefly to reexamine that opinion. Plainly stated, the Court found KRS 218A.020(1) and (2) in conjunction with "the individual statutes listing the criteria for a particular classification" set forth "adequate standards for the cabinet to use in classifying a substance under 902 KAR 55:025."[13] Specifically, the Court found subsection (1) to provide the Cabinet with the "affirmative duty to administer the chapter according to the standards set by the legislature" while subsection (2) "states the general standard the cabinet is to use in determining whether a substance should be controlled."[14] After the Cabinet determines that a substance should be controlled, "the statutes that follow KRS 218A.020 list the factors to be considered in placing a drug in one of the five different schedules."[15] According to the Court

---

**12.** 685 S.W.2d 546 (Ky.1984).

**13.** *Id.* at 548.

**14.** *Id.* at 547.

**15.** *Id. See* KRS 218A.040; KRS 218A.060; KRS 218A.080; KRS 218A.100; KRS 218A.120. Particularly relevant for this case is KRS 218A.080, which lists the criteria for classification under Schedule III.

in *Hollingsworth*, these individual statutes "set out specific mandatory standards to be used by the [C]abinet in classifying substances."[16]

Hamilton and Cole argue that the Cabinet improperly classified buprenorphine as Schedule III because it failed to "lay hands" on the regulation promulgated as a result of federal action. That is, the Cabinet must make findings under KRS 218A.080, one of the statutes setting out "mandatory standards" according to *Hollingsworth*, in order to "similarly control" buprenorphine as a Schedule III controlled substance under Kentucky law. We do not necessarily disagree with Hamilton and Cole on this point because it is important that the Cabinet comply with the standards established by the General Assembly. But it is our opinion that KRS 218A.020(3) simply adopts the procedures used and findings made by the federal government, which are strikingly similar to our law expressed in Chapter 218A.[17] Tellingly, in *Hollingsworth*, the Court did not seem to require an express statement showing the Cabinet had made the listed findings under KRS 218A.080.[18]

Regardless, given the nature of the statute in question and the similarity between the federal requirements and Kentucky's requirements for controlled substances, we believe the federal regulation[19] is appropriate for the trial court to take judicial notice of on remand.[20] Under Kentucky Rules of Evidence (KRE) 201, a court may take judicial notice, whether requested or not, of adjudicative facts that are "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is our opinion that the federal regulation at issue here satisfies the requirements under KRE 201. The federal regulation constitutes the findings by the Cabinet, as required under KRS 218A.080. This is simply a determination that the findings exist and the court takes judicial notice of them. "[I]n situations in which a statute, regulation, or other law constitutes a fact that is relevant to a dispute, judicial notice may be used in appropriate circumstances as a

16. *Id.*

17. *See* 21 U.S.C. §§ 802, 811, 812.

18. The Court acknowledged the defendant's argument that the Cabinet had failed to state the statutorily required findings in the regulation. But the Court went on to hold that the "eight factors [from KRS 218A.020(1)] in question merge into any consideration of the 'potential for abuse.' Accordingly, KRS 218A.080 itself sets forth adequate standards for the [C]abinet to use in classifying a substance under 902 KAR 55:025." *Hollingsworth*, 685 S.W.2d at 548. 902 KAR 55:025, the regulation listing Schedule III controlled substances, does not mention any findings by the Cabinet with regard to Pentazocine, the drug at issue in *Hollingsworth*. The listing of Pentazocine appears very similar to that of buprenorphine.

19. 67 Fed.Reg. 62354 (Oct. 7, 2002). *See also* 21 C.F.R. § 1308 (2002).

20. The position of the Alabama Supreme Court in *Ex parte McCurley* is appealing to this Court:

> We may take judicial knowledge of the fact that the Federal Register contains published accounts of preliminary and final control rulings of the Food and Drug Administration of the United States Department of Health, Education and Welfare, and these rules either call for or reflect public hearings, and that they include scientific findings on the qualities and propensities of drugs which are made the basis of recommendations from the Secretary of HEW to the Attorney General of the United States who has the statutory authority to add to or delete from the federal schedule.
> *Ex parte McCurley*, 390 So.2d 25, 30 (Ala. 1980).

substitute for evidence of that fact."[21] Here, Hamilton and Cole dispute the existence of the Cabinet's findings and wish to challenge the methodology used to determine buprenorphine was a Schedule III drug.

By taking judicial notice of the federal regulation, the *fact* of the Cabinet's findings is no longer in dispute.[22] Now Hamilton and Cole may challenge the findings by calling a witness from the Cabinet or the DEA, Plotnick, or any other witness they believe relevant to show the findings are deficient. The trial court has subject matter jurisdiction to determine if the Cabinet's findings are sufficient under KRS 218A.080 to classify buprenorphine as Schedule III. This process gets to the heart of how KRS 218A.020(3) operates. To "similarly control under this chapter" the Cabinet must comply with the requirements of Chapter 218A in modifying the classification of a controlled substance or introducing a substance to the controlled list.

But KRS 218A.080 does *not* require the Cabinet to make *independent* findings when operating under KRS 218A.020(3) and acting in response to federal action.

Instead, the statute allows the Cabinet, after receiving notice of a change in federal classification via a regulation in the *Federal Register*, to adopt the findings. Essentially, the federal findings are viewed as the Cabinet's findings. And the trial court does not lose subject matter jurisdiction simply because the Cabinet relies on federal laboratory testing in its findings. The Cabinet's adoption of the DEA's scientific findings is not materially different than if the Cabinet contracted with a third-party, independent laboratory to perform drug testing on the Cabinet's behalf or if the Cabinet relied upon published testing by a third-party laboratory. The trial court would not be stripped of jurisdiction in those instances. Instead, the parties would simply call witnesses from the third-party laboratory to testify about the methodology used on behalf of the Cabinet. The same principle applies here.

The Cabinet may look at the federal findings to ensure they meet the standards required by Kentucky law under KRS 218A.080. After finding them sufficient, the Cabinet may promulgate a regulation "similarly control[ling]" the particular substance. KRS.218A.020(3) is an efficiency provision.[23] The Cabinet is enabled to

**21.** ROBERT G. LAWSON, The Kentucky Evidence Law Handbook § 1.00[6], p. 23 (4th ed.2003) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir.2002)) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case. However, whether a fact is adjudicative or legislative depends on the manner in which it is used.... A legal rule may be a proper fact for judicial notice if it is offered to establish the factual context of the case, as opposed to stating the governing law.").

**22.** The judge is not taking judicial notice that the findings are sufficient for purposes of KRS 218A.080 or that the scientific evidence contained within them is irrefutable. That would be a legal determination. Instead, the judge is taking judicial notice of the existence of the findings—essentially imputing the fed-

eral regulation to the Cabinet—in order to make sure they are sufficient to satisfy Kentucky requirements. KRS 218A.080(1)–(3) plainly requires the Cabinet to "find" certain criteria in order to properly classify a drug in Schedule III.

**23.** "The legislature is not constantly in session, and, therefore, even if its members were all trained chemists and pharmacists, it is impossible for them to keep abreast of the constantly changing drugs and medications and their inherent dangers." *State v. Thompson*, 627 S.W.2d 298, 303 (Mo.1982). Much of the same logic applies to the Cabinet in this case. It may reasonably be assumed that the DEA has access to greater resources than the Cabinet. As a result, it is much easier for the DEA to stay up to date on the latest drug dangers. It is completely logical for the Gen-

adopt the findings rather than being forced to go through the costly and time-consuming, possibly impossible (depending on resources), process of duplicating them. Requiring the Cabinet, in order to satisfy KRS 218A.080, to make findings rather than adopt the federal findings would render KRS 218A.020(3) relatively meaningless because the Cabinet would then be forced to satisfy subsections (1) and (2) as if it was controlling substances on its own initiative. Obviously, the General Assembly did not wish for subsection (3) to be viewed as superfluous. The intent of the General Assembly to create a separate procedure under KRS 218A.080(3) seems clear.

Accordingly, the trial court has subject matter jurisdiction and may review the merits of Hamilton and Cole's challenge to the Cabinet's treatment of buprenorphine. We appreciate the trial court's cautious approach, but this is not a case where federal agency action is to be invalidated. Rather, this case involves a determination of whether the findings adopted by an agency of this Commonwealth adopted from a federal agency satisfy the laws of this Commonwealth. This determination is entirely proper for our courts, and we remand this case to the trial court for further proceedings consistent with this opinion.

## III. REMAINING ISSUES.

Our decision to remand the case to the trial court leaves unresolved issues. Be-

cause the remaining issues are likely to recur on remand, we will address them in turn.[24]

### A. The Court of Appeals Erred in Requiring the Attorney General and Cabinet be Named Parties.

The Court of Appeals concluded on its own motion that Hamilton and Cole's appeal should be dismissed for failure to join as parties the Attorney General and the Cabinet, effectively rendering them necessary and indispensable parties to this criminal case. Finding several aspects of the disposition of this issue by the Court of Appeals troubling, we must disagree.

#### 1. The Attorney General.

■ We reject as unnecessary the requirement of the Court of Appeals that the Attorney General be added as a party on remand, a requirement effectively mandating the Attorney General participate in the proceedings. Our concern with the requirement of the Court of Appeals here is two-fold. First, we are uneasy with ordering parties to be added to a criminal prosecution. The lack of any directive or legal support in the opinion from the Court of Appeals does not ease our concern. In a criminal prosecution, the necessary parties are seemingly straightforward—the Commonwealth versus the defendant. No other parties are needed in order for the trial court to issue a judgment in the action.[25] We are unsure of how another party would participate in a proceeding of this nature. It is not argued that if we were to require

---

eral Assembly to provide the Cabinet with the ability to look to the federal government for education in the latest developments in controlled substances.

24. *See, e.g., Blane v. Commonwealth,* 364 S.W.3d 140, 154 (Ky.2012); *Bell v. Commonwealth,* 245 S.W.3d 738, 743 (Ky.2008) ("Because the judgment has been reversed for the foregoing reasons, we will address only those

additional assignments of error that are likely to recur upon retrial."); *Terry v. Commonwealth,* 153 S.W.3d 794, 797 (Ky.2005) ("We will also address other issues that are likely to recur upon retrial.").

25. *See* CR 19.01 (requiring joinder of a party if "in his absence complete relief cannot be accorded among those already parties[.]").

the Attorney General as a party he would participate in the prosecution of Hamilton and Cole.[26] But we are left with the question of what other role would a party in a criminal prosecution play? Certainly, the Attorney General is not at risk of being prosecuted and, as such, would not step into the proceedings on the side of the defendant. Perhaps the Court of Appeals intended to require the Attorney General simply to participate at the hearing determining the constitutionality of the relevant statute. But this would not require the Attorney General to be added as a *party*. By statute, the trial court or County and Commonwealth's attorneys could simply invite the Attorney General to participate in the proceedings.[27] In accepting the invitation, the Attorney General may participate in whatever manner he deems appropriate, subject to the trial court's orders.

■■ Second, the Attorney General is not required by law to participate in any proceeding of which notice is received regarding a potential constitutional challenge. While it is clear that the Attorney General must be given notice, the law has never been found to say the Attorney General must then participate. All that is required is the Attorney General be given

the *opportunity* to intervene and be heard on the matter.[28] Indeed, he is only "entitled to be heard." [29] The courts cannot by judicial fiat simply order the Attorney General to participate and either defend or challenge the constitutionality of a particular statute.[30] The Attorney General is statutorily granted discretion, and it is improper for the court to strip that away.

Finally, we take issue with the Court of Appeals characterizing the Attorney General as a party at the appellate level. In characterizing the Attorney General in this manner, the Court of Appeals relied upon an unpublished decision from this Court, holding that "where the constitutional validity of a statute is raised for the first time on direct appeal, the notice requirement of KRS 418.075(2) is satisfied by the filing of the appellate brief" when the Commonwealth is represented by the Attorney General.[31] But this is directly contradictory to our holding in *Benet v. Commonwealth*. Benet admitted that he did not notify the Attorney General of his constitutional challenge at the trial court, relying solely on his appellate brief to provide notice. The Court dismissed this argument entirely, "reject[ing] any contention that merely filing an appellate brief, which necessarily occurs post-judgment,

**26.** The Attorney General's power to prosecute cases is defined by statute. The General Assembly has, at least arguably, promoted a policy of preventing the Attorney General from intervening in criminal prosecutions at the trial level or performing the prosecution, absent special circumstances. *See* KRS 15.715 (allowing Attorney General to intervene in criminal prosecutions, only upon the removal of the local prosecutor); *see also* KRS 15.220 (limiting Attorney General's power so as not to deprive local officers of power absent certain exceptions).

**27.** KRS 15.190; KRS 15.200.

**28.** *See, e.g., Maney v. Mary Chiles Hosp.*, 785 S.W.2d 480, 482 (Ky.1990) ("[N]o judgment shall be entered which decides the constitu-

tionality of a statute until the Attorney General is given notice and an *opportunity* to be heard.") (emphasis added).

**29.** KRS 418.075. *See also* CR 24.03 (requiring only service of the challenge's notice upon the Attorney General).

**30.** While we do not rely on this reasoning, we would be remiss not to mention that the opinion of the Court of Appeals at least arguably raises separation of powers concerns. The judiciary should not dictate how an executive branch official should exercise his discretion.

**31.** *Owens v. Commonwealth*, 2008 WL 466132 (2006–SC–000713–MR (Ky. February 21, 2008)).

satisfies the clear requirements of KRS 418.075." [32] The filing of an appellate brief may satisfy the requirements of KRS 418.075(2), but this does not salvage a party who has failed to satisfy KRS 418.075(1) and provide notice to the Attorney General at the trial court. Accordingly, we discard the notion that the Attorney General is now a party on appeal.

So contrary to the directive of the Court of Appeals, we conclude that this case should not be remanded to make the Attorney General a party. Whether the Attorney General participates in the proceedings on remand or not rests within his official discretion. [33]

### 2. The Cabinet.

■ Likewise, the Cabinet is not a necessary party to this action and need not be included as a party on remand. The Court of Appeals, in finding it was reversible error for the Cabinet to be absent from these proceedings, heavily relied upon KRS 13A.140. Under KRS 13A.140, "when an administrative regulation is challenged in the courts it shall be the duty of the promulgating administrative body to show and bear the burden of proof to show" that the regulation meets various criteria regarding the statutory authority given to and procedure required of the agency. Unfortunately, the Court of Appeals provided little analysis beyond a citation to KRS 13A.140. We are left with little choice but to craft reasoning for the Court of Appeals and assume the Cabinet's having the burden of proof but not being a party was a fatal flaw in the eyes of the Court of

Appeals. This reasoning is alluring but when we read Chapter 13A in its entirety and look at our case law in conjunction with that of our sister states, we cannot support the conclusion reached by the Court of Appeals.

Initially, KRS 13A. 140 does not require the Cabinet be a party in the action in order for its language and purpose to be satisfied. The statute places the burden of proof on the promulgating agency to show various legal aspects of the agency's challenged action. But this policy decision by the General Assembly to place the burden on the agency does not eliminate the presumption of validity, which remains "until declared otherwise by a court." [34] This is a relatively unusual method because a number of states place the burden on the party challenging the validity of the regulation. [35] Of course, this is an appealing tradeoff for the agency—take on the burden of proof, but enjoy a presumption of validity.

We draw attention to the operation of this statute because, at first blush, the reading by the Court of Appeals seems acceptable, if not entirely correct. But the totality of the statute's language does not embrace the type of fact-intensive, investigative determination that would possibly require having the Cabinet participate in the action as a party. Notably, the statute omits any indication of what burden the Cabinet is expected to meet. Instead, the statute calls for a presumptive, purely legal determination by the trial court—a determination that could be performed

---

32. *Benet*, 253 S.W.3d at 532.

33. As an aside, we note that arguably, the proper method for Hamilton and Cole to proceed with would be the filing of a declaratory judgment action while holding the criminal sentencing in abeyance. If Hamilton and Cole seriously consider the Attorney General and Cabinet necessary parties, the declaratory

judgment action could be filed with the Attorney General and the Cabinet as parties.

34. KRS 13A.140.

35. *See, e.g.*, IND. CODE § 4–21.5–5–14(a); Kan. Stat. Ann. § 77–621(a)(1).

with a Cabinet representative as a witness providing testimony to the relevant statutory authority under which the agency acts. Furthermore, a trial court is capable of looking at the relevant statutes and determining the criteria listed in KRS 13A.140. Simply put, the statute does not anticipate or demand a level of proof that would necessitate the Cabinet being made a party.

Section 2 of the statute is further signal that it is not necessary to mandate the Cabinet's participation as a party. "It shall be prima facie evidence of compliance with the provisions of this section as to the holding of hearings, statements of consideration, consideration of tiering, local government impact, and fiscal impact to file with the court appropriate citations to the Administrative Register which indicate such compliance."[36] Tellingly, KRS 13A.140(2) allows the presumption of validity to cover the factual issues surrounding the agency's promulgation. The Cabinet could provide citations to the Administrative Register as a witness. The trial court, viewing the Cabinet's testimony with a presumption of conformity, would have no trouble determining if the Cabinet's testimony met the "burden of proof."

At the evidentiary hearing in this case, the Cabinet provided a witness; and Hamilton and Cole asked him several questions about the validity of the regulation. It would be difficult to argue that Johnson was highly knowledgeable of the promulgation of the regulation; but it is not difficult to imagine that the Cabinet could provide—and the Commonwealth or Hamilton and Cole could ask for—a witness more familiar with the promulgation of the regulations in question here.

Furthermore, the concerns mentioned previously about mandating a party be added in a criminal action apply equally to the Cabinet. It is unprecedented and not at all clear what role the Cabinet would play as a party to a criminal prosecution. Because there is no urgent need to take this step, we decline to label the Cabinet as an indispensable or necessary party in this criminal prosecution.[37]

The Court of Appeals cites no authority for mandating the Cabinet be named a party on remand. And we are unable to find a case from this jurisdiction, or any other, where the relevant administrative agency was required to be a party in a criminal action in which a statute or regulation is being challenged.[38] The Common-

---

**36.** KRS 13A.140(2).

**37.** This opinion should not be read to prohibit the Cabinet from seeking to intervene in the evidentiary hearing. We simply hold that the Cabinet is not a *necessary* party that would require its joinder, as described in CR 19. We note that CR 24.02 seems to support permitting a party such as the Cabinet to intervene in an action. The rule states, "When a party to an action relies for ground of claim or defense upon ... any regulation, ... the officer or agency upon timely application may be permitted to intervene in the action." Further, it is within the trial court's discretion to permit the Cabinet to intervene for the limited purpose of the evidentiary hearing. *See Commonwealth, Energy and Environment Cabinet v. Shepherd*, 366 S.W.3d 1, 5 (Ky.

2011) (mentioning that the "trial court's order limited the Citizen Plaintiffs' intervention, initially at least, to commenting upon and raising objections to the proposed consent judgment."). We see no problem with the trial court exercising its discretion in this manner. Our main grievance with the opinion of the Court of Appeals is not only the requirement that the Cabinet be added but also that it be added as a party. There are available alternatives to the trial court in this action.

**38.** *See, e.g., Commonwealth v. Hollingsworth,* 685 S.W.2d 546 (Ky.1984) (challenging KRS 218A.020(1)–(2)); *McCurley v. State,* 390 So.2d 25 (Ala.1980) (challenging Alabama's drug scheduling statute); *Curry v. State,* 279 Ark. 153, 649 S.W.2d 833 (1983) (challenging

wealth argues, despite citing little in support, that the Cabinet should be named a party simply because Hamilton and Cole challenged the Cabinet's actions. And the Commonwealth acknowledges that while KRS 13A. 140 relates to the agency's statutory authority, it is silent as to the agency's constitutional authority, an issue raised at trial. We do not find these to be compelling reasons to find reversible error for failure to name the Cabinet as a party.

## IV. CONCLUSION.

We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion. On remand, the trial court may take judicial notice of the federal regulation amending buprenorphine from a Schedule V drug to a Schedule III drug under federal law. A hearing may be held on the matter, but it is not necessary to name the Attorney General and the Cabinet as parties. Hamilton and Cole may present evidence challenging the sufficiency of the findings if they wish, including calling a witness from the Cabinet or DEA to testify about the procedures. And the trial court is to determine if the findings adopted by the Cabinet are sufficient to satisfy KRS 218A.080.[39]

All sitting. All concur.

Arkansas' Uniform Controlled Substances Act); *State v. Ciccarelli,* 55 Md.App. 150, 461 A.2d 550 (1983) (challenging state drug scheduling); *People v. Turmon,* 417 Mich. 638, 340 N.W.2d 620 (1983) (challenging Michigan's Controlled Substances Act); *State v. King,* 257 N.W.2d 693 (Minn.1977); *State v. Thompson,* 627 S.W.2d 298 (Mo.1982); *State v. Klinck,* 44 Ohio St.3d 108, 541 N.E.2d 590 (1989); *State v. Green,* 793 P.2d 912 (Utah

1990); *State v. Dougall,* 89 Wash.2d 118, 570 P.2d 135 (1977).

**39.** Under this approach, the Cabinet is not required to state their findings in the promulgated regulation. This is consistent with *Hollingsworth* and provides Hamilton and Cole the ability adequately to challenge the promulgated regulation.